1  ROBERT C. SCHUBERT S.B.N. 62684
2  WILLEM F. JONCKHEER S.B.N. 178748
   SCHUBERT & REED LLP
3  Three Embarcadero Center, Suite 1650
   San Francisco, California 94111
4  Telephone: (415) 788-4220

5  Local Counsel for Plaintiff

6  PAUL D. WEXLER
   BRAGAR WEXLER & EAGEL, P.C.
7  885 Third Avenue
   New York, New York 10022
8  Telephone: (212) 308-5858

9
   GLENN F. OSTRAGER
10 OSTRAGER CHONG FLAHERTY & BROITMAN P.C.
   570 Lexington Avenue
11 New York, New York 10022
   Telephone: (212) 681-0600
12
   Counsel for Plaintiff
13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16

17 LEON S. SEGEN, derivatively on behalf of
   APPLIED MICRO CIRCUITS
18 CORPORATION,

19                                    VERIFIED COMPLAINT FOR
       Plaintiff,                     VIOLATION OF THE SECURITIES
20                                    EXCHANGE ACT OF 1934
21 v.

22 DAVID M. RICKEY, WILLIAM E.        JURY TRIAL DEMANDED
   BENDUSH, and APPLIED MICRO
23 CIRCUITS CORPORATION,

24     Defendants.

25

26

27

28

E-filing

C 07 2917 MJJ

*(vertical left margin)* SCHUBERT & REED LLP  Three Embarcadero Center, Suite 1650  San Francisco, CA 94111  (415) 788-4220

Plaintiff Leon S. Segen, by his attorneys, Schubert & Reed LLP, Bragar Wexler & Eagel, P.C. and Ostrager Chong Flaherty & Broitman P.C., complaining of defendants, alleges as follows, upon information and belief as to all allegations, except those contained in paragraph 1:

### THE PARTIES

1.      Plaintiff is a New York resident who is the owner of common stock of Applied Micro Circuits Corporation ("AMCC" or "the Company").

2.      AMCC, a nominal defendant herein, is a Delaware corporation with its principal place of business at 215 Moffett Park Drive, Sunnyvale, California 94089.

3.      Defendant David M. Rickey ("Rickey") is the former Chairman, Chief Executive Officer and President of the Company.  Ricky maintains an office c/o Cytori Therapeutics, Inc., 3020 Callan Road, San Diego, California 92121.

4.      Defendant William E. Bendush ("Bendush") is the former Senior Vice President and Chief Financial Officer of the Company.  Bendush maintains an office c/o Microsemi Corp., 2381 Morse Avenue, Irvine, California 92614.  Defendants Rickey and Bendush are collectively referred to herein as the "Individual Defendants."

### JURISDICTION AND VENUE

5.      This action is brought derivatively on behalf of AMCC pursuant to §16(b) of the Securities Exchange Act of 1934, as amended ("Exchange Act"), 15 U.S.C. §78p ("§16(b)" or "Section 16(b)"), to obtain disgorgement of profits obtained by defendants in violation of that statute.  Jurisdiction of this court and venue in this district are proper pursuant to 15 U.S.C. §78(a)(a).

### THE GOVERNING LAW

6.      Section 16(b) of the Exchange Act provides that if a person, who is an officer or director of an issuer of a class of registered equity securities, purchases and sells or sells and

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

2

1  purchases shares of any equity security of such issuer within a period of less than six months, any

2  profits arising from those transactions are recoverable by the issuer or by a shareholder suing

3  derivatively on its behalf.

4       7.     SEC Rule 16b-3 ("the Rule") provides an exemption for "transactions between an

5  issuer and its officers or directors" if the transaction satisfies certain conditions.  In pertinent part,

6  Rule 16b-3 provides:

**Transactions between an issuer and its officers or directors.**

(a) *General.*  A transaction between the issuer . . . and an officer

or director of the issuer that involves issuer equity securities shall

be exempt from section 16(b) of the Act if the transaction satisfies

the applicable conditions set forth in this section.

* * *

(d) *Acquisitions from the issuer.*  Any transaction, other than a

Discretionary Transaction, involving an acquisition from the issuer

(including without limitation a grant or award), whether or not

intended for a compensatory or other particular purpose, shall be

exempt if:

(1)  The transaction is approved by the board of directors of the

issuer, or a committee of the board of directors that is composed

solely of two or more Non-Employee Directors;

* * *

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

3

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

(3)  The issuer equity securities so acquired are held by the officer

or director for a period of six months following the date of such

acquisition, provided that this condition shall be satisfied with

respect to a derivative security if at least six months elapse from

the date of acquisition of the derivative security to the date of

disposition of the derivative security (other than upon exercise or

conversion) or its underlying equity security.

17 C.F.R. § 240.16b-3.

8.     In the Release proposing the Rule, the SEC states that it sought to craft a rule which, consistent with the statutory purpose of Section 16(b), erected meaningful safeguards against the abuse of inside information by officers and directors without impeding their participation in legitimate compensatory transactions. *Ownership Reports and Trading by Officers, Directors and Principal Stockholders*, Exchange Act Release No. 36356, 60 Fed. Reg. 53832, 53835, 60 SEC Docket 1393, 1396, 1995 WL 597472 at *3, *7 (Oct. 11, 1995).

9.     As shown in paragraphs 30 through 33 *infra*, the Individual Defendants, who were officers of AMCC at the relevant times, engaged in purchases and sales of AMCC securities within a six month period, leading to substantial profits that must be disgorged to AMCC.  In particular, during the period from 2000 through at least 2001, the Individual Defendants received option grants from the Company and improperly asserted that such grants were subject to an exemption from the statute under Rule 16b-3.  Absent a valid exemption, a grant of options is deemed to be a purchase of the underlying securities by the recipient of the option that can be matched with sales made by the recipient within six months of the date of the option grant.  For the reasons set forth below, the Individual Defendants are not entitled to any exemption and, thus are liable for the profits that they have improperly garnered.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

4

## NO EXEMPTION FOR THE OPTION GRANTS

**A.    SEC Rule 16b-3(d)(1) Does Not Apply.**

10.    As noted above, unless there is an exemption for the option grants purportedly issued on January 19, 2000, March 8, 2000, December 21, 2000, and July 11, 2001 (collectively, the "Option Grants"), the Individual Defendants' acquisitions of these derivative securities represent purchases of the underlying common stock, which are matchable with sales made by the respective defendant within the six month period of the grant. With respect to each of the Option Grants, the Individual Defendants claimed in a Form 4 or Form 5 filed with the SEC that the transaction was exempt from §16(b) pursuant to SEC Rule 16b-3(d). However the conditions for the exemption were not met.[1]

11.    To satisfy SEC Rule 16b-3(d)(1), a board or a committee of at least two outside directors must approve the option grant in advance. *See Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Release 34-37260 (1996), 61 Fed. Reg. 30376, 30,380 (June 14, 1996)("the 1996 Adopting Release"). In addition, the board or committee is required to "actually consider each specific transaction and that it evidence 'acknowledgment and accountability' as to what it is doing." *See* SEC amicus brief to the 9th Circuit in *Dreiling v. American Express Travel Related Services,* 04-35715, at 25 www.sec.gov/litigation/amicusbriefs.shtml; Note 3 to Rule 16b-3(d). Neither AMCC's Board nor its Compensation Committee approved or authorized in advance the Option Grants.

12.    At all relevant times, the Compensation Committee consisted of three non-employee members of AMCC's Board of Directors. It was the Compensation Committee's province to approve option grants to AMCC's executives. Although the Compensation Committee's charter required that the obligation to approve grants and awards to executive officers of the Company could not be delegated, the Compensation Committee permitted AMCC's management, including the Individual Defendants, to grant options to certain employees.

---

[1] The Option Grants were not approved by the shareholders in accordance with Rule 16b-3(d)(2).

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

13.    SEC Commissioner Roel C. Campos gave a speech directed to this very issue – and directly related to option back-dating practices on August 15, 2006. In his speech, Mr. Campos stated that one of the two biggest "don'ts" for directors is "don't" delegate critical board functions that require independent committee oversight, unless you're extremely careful to adopt procedures to ensure that there are appropriate checks and balances in place. *See* "How to Be An Effective Board Member," Speech by SEC Commissioner Roel C. Campos, Boston, Mass, August 15, 2006. Mr. Campos went on to say the board's failure to exercise appropriate oversight is a "signal to the company's officers that directors are not taking their obligations as director seriously and are willing to let expediency guide their decision-making." *Id.*

14.    None of the Options Grants at issue in this case were approved in advance by the Board or an authorized committee of the Board. Moreover, neither the Board nor an authorized committee of the Board considered the specific transactions and approved them as required by the SEC Rule 16b-3(d)(1). On the contrary, the Board impermissibly delegated the gate-keeping functions of the Rule by placing the fox in charge of the henhouse. Accordingly, the Option Grants are not entitled to the exemption provided by SEC Rule 16 b-3(d)(1).

15.    Nor is it possible that the Board or an authorized committee of the Board could have approved in advance the Option Grants. As evidenced by the Company's restatement of its financial statements, the Option Grants were improperly accounted for as though they were granted on dates prior to their actual grant dates with exercise prices equal to the market prices on such dates. *See* Paragraphs 18 to 22 below. Neither the Board nor any committee of the Board knowingly approved in advance backdated options.

**B.    SEC Rule 16b-3(d)(3) Does Not Apply.**

16.    SEC Rule 16b-3(d)(3) provides an alternative exemption for recipients of options grants who "hold" the derivative securities and the underlying securities for at least six months after receipt. However, the condition precedent to the application of this provision is that the Board knowingly authorizes the option grants. In *Dreiling v. American Express Co.*, 458 F.3d 942, 948 (9th Cir. 2006) the Ninth Circuit explained the SEC's rationale as follows:

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

6

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

> The SEC adopted the 1996 version of Rule 16b-3(d) as part of a
> number of amendments to Rule 16b-3 to present a "simplified,
> flexible approach" to insider transactions.  Ownership Reports and
> Trading by Officers, Directors and Principal Security Holders, 61
> Fed.Reg. 30,376, 30,377 (June 14, 1996) [the "1996 Adopting
> Release"]….The SEC…concluded that short-swing transactions
> between an insider and an issuer that "*satisfy ... objective gate-*
> *keeping conditions[ ] are not vehicles for the speculative abuse*
> *that section 16(b) was designed to prevent." Id.*  Thus, the SEC
> enacted Rule 16b-3(d) because board or shareholder-approved
> insider transactions were "not contemplated within the purpose" of
> §16(b).

The Court noted also that the objective gate-keeping functions would serve as a curb on insider abuse:

> After notice and comment, the SEC determined that board-
> approved transactions between an issuer and an insider were
> unlikely to result in speculative abuse, and that the risk of such
> abuse was therefore tolerable.  As amicus curiae, the SEC adds that
> in considering Rule 16b-3(d), it found that insider-issuer
> transactions did not pose an intolerable great risk of abuse because
> *"[b]oard or shareholder approval will remove the timing of the*
> *acquisition from the control of any one insider and also tend to*

7

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

*assure that the acquistion is for a legitimate corporate purpose."*

*See also Gryl v. Shire Pharm. Group PLC*, 298 F.3d 136, 145-46

(2d Cir.2002)(emphasis added).

*Dreiling v. American Exp. Co.*, 458 F.3d 942, 950 (9th Cir. 2006).

17.    The Rule 16b-3(d)(3) exemption is not available for the Option Grants because the Option Grants were not approved by AMCC's Board in a manner that satisfied the requisite gate-keeping requirements of the Rule. On the contrary, the Option Grants were the product of a backdating scheme unknown to the Board and not approved by it.

**i.    The Failure of the Board to Approve the Grants Was Part of a Backdating Scheme.**

18.    On or about May 23, 2006, AMCC through its Audit Committee commenced a formal investigation concerning the Company's stock option granting practices. The Audit Committed consisted non-employee directors Harvey P. White, as Chairman, Arthur Stabenow, and Julie Sullivan.   It is noteworthy, that Messrs. White and Stabenow were also members of the Compensation Committee that had oversight responsibilities with respect to the back dated Option Grants at issue.

19.    On or about January 17, 2007, the Company filed a Form 10-K with the SEC reporting the results of an investigation by the Audit Committee relating to past stock grants. The Form 10-K reported that the Company had improperly dated certain stock option grants. On the recommendation of the Audit Committee, the Board of Directors determined that all financial statements and related reports of the Company's independent registered public accounting firms, earnings press release and similar communications issued for the periods beginning with fiscal 1998 should no longer be relied upon. Based upon the Audit Committee's investigation, the Board of Directors determined that the Company should have recognized approximately $95.2 million of stock-based compensation expense that was not previously accounted for in its previously issued financial statements. As a result, the Company restated its financial information for each of the fiscal years ended March 31, 1999, 2000, 2001, 2002, 2003 and 2004.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

8

20.    The Form 10-K further disclosed that the Compensation Committee had not approved certain option grants, certain approvals had been undated, and that in other cases management changed the exercise prices of the options after the option grants were approved, but before they were processed to take advantage of lower closing prices that occurred within a few days after the approved grant date.

21.    It is now clear that the Company and its senior officers and/or directors, including the Individual Defendants, were engaged in a scheme to backdate the grant of options in order to unjustly enrich the recipients. Although the Option Grants are dated January 19, 2000, March 8, 2000, December 21, 2000, and July 11, 2001, with an exercise price equivalent to the market price of AMCC common stock on these dates, in reality, the options were issued days or weeks later. Had the options been granted with exercise prices equivalent to the market prices on the actual grant dates, the exercise prices would have been substantially higher than the exercise prices on the purported dates.

22.    The circumstances described above show that the Board did not approve or authorize the Option Grants. Accordingly, the Individual Defendants cannot take advantage of the exemption provided by Rule 16b-3(d)(3).

ii    **The Six Month Holding Period Exemption is Beyond the Scope of the SEC's Authority.**

23.    If the Court should find that one or both of the Individual Defendants did satisfy the holding period exemption, this Court should hold that SEC Rule 16b-3(d)(3) is: (a) unenforceable as it exceeds the SEC's authority under §16(b) to grant exemptions; (b) contrary to case law precedent and (c) contrary to the gate-keeping rationale offered by the SEC as justification for the Rule.

24.    The SEC has not had occasion to publicly interpret this exemption in the context of the growing scandal surrounding the backdating of options. However, if asked, it is unlikely that the SEC would agree that options, as here, which were not approved by AMCC's Board are entitled to the exemption. *See Dreiling,* 458 F.3d at 954 ("*Rule 16b-3(d)* requires an issuer board to approve the *specific* insider transaction for which the exemption is sought.") But if the SEC did read Rule

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

9

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

16b-3(d)(3) to permit an exemption for these unauthorized backdated grants, this interpretation would not be entitled to deference because it flies in the face of the purpose of both §16(b) and its own regulations. *See, Director, Office of Workers Compensation v. Eastern Associated Coal*, 54 F.3d 141, 146 (3d Cir. 1995) ("We look to see whether the regulation harmonizes with the plain language of the statute, its origin and its purpose").

25.    The power given by Congress to the SEC to exempt transactions under the statute is narrowly circumscribed, allowing an exemption only for transactions "not comprehended within the purpose' of §16(b)." *Feder v. Martin Marietta Corp., 406* F.2d 260, 268 (2d Cir. 1969) (quoting 15 U.S.C. §78p(b)). This limited grant of authority requires that the SEC's "regulations be consistent with the expressed purpose of the statute." *Smolowe v. Delendo Corp.,* 136 F.2d 231, 240 (2d Cir. 1943). It is plain that an interpretation of the Rule affording an exemption for backdated options which are not approved by an issuer's board of directors would be counter to the purposes of §16(b) and would be an impermissible exercise of agency authority.

## THE STATUTE OF LIMITATIONS IS TOLLED

26.    Although §16(b) generally has a two year limitations period, the law in this Circuit is clear that unless the defendant has made a proper filing with the SEC setting forth the transactions and alerting the investment community to the disgorgeable profits, the limitations period is tolled. As the Ninth Circuit has held:

> In summary, we hold that an insider's failure to disclose covered transactions in the required § 16(a) reports tolls the two year limitations period for suits under § 16(b) to recover profits connected with such a non-disclosed transaction. The two-year period for § 16(b) begins to run when the transactions are disclosed in the insider's § 16(a) report. (footnote omitted).

*Whittaker v. Whittaker Corp.*, 639 F.2d 516, 530 (9th Cir. 1981)

10

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

27.    The Option Grants were not properly disclosed and in fact have not been properly disclosed to this date. Accordingly, the statute of limitations is tolled.

## AS AND FOR A CLAIM FOR RELIEF

28.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29.    At all relevant times, each of the Individual Defendants was an officer or director of the Company.

30.    During the period from 1999 through at least 2001, Rickey and Bendush received option grants that were improperly granted without proper approval under the Company's option plans. The grants included grants to Rickey of 4,000,000 options on January 19, 2000, 800,000 options on December 21, 2000 and 400,000 options on July 11, 2001; and grants to Bendush of 360,000 options on March 8, 2000, 125,000 options on December 21, 2000, and 85,000 options on July 11, 2001.

31.    Under Section 16(b), the Option Grants received by the Individual Defendants constitute non-exempt purchases of the underlying AMCC common stock, and are matchable with sales of AMCC stock made by the Individual Defendants within the six-month statutory period. During the period 2000 through at least 2001, the Individual Defendants engaged in sales of the Company's stock at various times that occurred within six months of the Option Grants set forth above.   These sale transactions took place within the statutory six month short-swing profit period prescribed by Section 16(b). It is now impossible to identify the precise sales that are matchable with these option grants or the exact quantum of profits to be disgorged. Plaintiff expects to be able to provide those calculations at the conclusion of discovery.

32.    As a result, the Individual Defendants garnered short-swing profits, which are subject to disgorgement, as described below:

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1    a)    Rickey: total profits to be disgorged of not less than $50 million. Annexed hereto as

2  Ex. A are the SEC Form 4s filed by Rickey that provide the dates of the transactions, the prices at

3  which the purchases and sales were made, and the number of shares purchased and sold, and

4    b)    Bendush: total profits to be disgorged of not less than $18 million. Annexed hereto

5  as Ex. B are the SEC Form 4s filed by Bendush that provide the dates of the transactions, the prices

6  at which the purchases and sales were made, and the number of shares purchased and sold.

7    33.    The prices used for the calculations of profits in paragraph 32, *supra*, are subject to

8  adjustment based upon the determination of the actual market price on the dates that the options

9  were actually granted.

## ALLEGATION AS TO DEMAND

12    34.    On June 9, 2006, plaintiff made demand upon AMCC to commence this lawsuit.

13  AMCC has failed to do so.

15    **WHEREFORE**, plaintiff demands judgment on behalf of AMCC against defendants, as

16  described above, plus attorneys' fees, interest and such other and further relief as to the Court may

17  seem just and proper.

Dated: June 5, 2007

SCHUBERT & REED LLP

By: _____

WILLEM F. JONCKHEER
Three Embarcadero Center Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220

Local Counsel for Plaintiff

PAUL D. WEXLER
BRAGAR WEXLER & EAGEL, P.C.
885 Third Avenue

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

New York, New York 10022
Telephone: (212) 308-5858

GLENN F. OSTRAGER
OSTRAGER CHONG FLAHERTY
 & BROITMAN P.C.
570 Lexington Avenue
New York, New York 10022
Telephone: (212) 681-0600

Counsel for Plaintiff

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

13

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

# VERIFICATION

STATE OF NEW YORK

COUNTY OF NEW YORK

     Leon S. Segen, being sworn states:

     I am the plaintiff herein. I have read the foregoing Verified Complaint and the same is true to my knowledge, except as to matters stated to be upon information and belief, and as to those matters, I believe them to be true.

                                         Leon S. Segen

Sworn to before me on the

23rd day of May 2007

Notary Public

BRIAN BELLER
Notary Public, State of New York
No. 02BE6125640
Qualified in New York County
Commission Expires April 18, 2009

---

14

VERIFIED COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220