1  DOUGLAS J. CLARK, State Bar No. 171499
   DANIEL W. TURBOW, State Bar No. 175015
2  DALE R. BISH, State Bar No. 235390
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
5  Facsimile: (650) 565-5100
   Email: dturbow@wsgr.com
6
   Attorneys for Nominal Defendant
7  Applied Micro Circuits Corporation

8
                    **UNITED STATES DISTRICT COURT**
9
                    **NORTHERN DISTRICT OF CALIFORNIA**
10
                         **SAN FRANCISCO DIVISION**
11

12 LEON S. SEGEN, derivatively on behalf of   )   CASE NO.: C 07-2917 MJJ
   APPLIED MICRO CIRCUITS                    )
   CORPORATION, INC.,                        )
13                                           )
                                             )   **NOMINAL DEFENDANT APPLIED**
           Plaintiff                         )   **MICRO CIRCUITS**
14                                           )   **CORPORATION'S NOTICE OF**
   v.                                        )   **MOTION AND MOTION TO**
15                                           )   **DISMISS COMPLAINT**
   DAVID M. RICKEY, WILLIAM E. BENDUSH,      )
16 and APPLIED MICRO CIRCUITS                )   DATE:     November 27, 2007
   CORPORATION,                              )   TIME:     9:30 a.m.
17                                           )   COURTROOM: 11
           Defendants.                       )
18                                           )
                                             )   JUDGE:    Honorable Martin J. Jenkins
19                                           )
                                             )   Action Filed:  June 5, 2007
20                                           )   Trial Date:    Not Set
                                             )
21 _____)

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................... 1

STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3)) ..................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

INTRODUCTION....................................................................................................................... 2

ARGUMENT .............................................................................................................................. 3

I.    THE COMPLAINT IS SUBJECT TO THE HEIGHTENED PLEADING STANDARDS OF RULE 9(B) ........................................................................................ 3

II.    THE CHALLENGED TRANSACTIONS ARE EXEMPT FROM SECTION 16(b) ........ 4

    A.    The Statutory Framework................................................................................... 4

    B.    The Rule 16b-3(d) Exemptions .......................................................................... 5

    C.    The Grants At Issue Fall Squarely Within The Rule 16b-3(d)(1) Exemption ........ 7

        1.    Plaintiff's "In Advance" Theory Fails as a Matter of Law ......................... 7

        2.    Plaintiff's "Non-Delegation" Theory Fails as a Matter of Law ................. 9

    D.    The Grants At Issue Fall Within The Rule 16b-3(d)(3) Exemption...................... 11

III.    PLAINTIFF'S CLAIMS ARE TIME-BARRED................................................................ 12

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Citadel Holding Corp. v. Roven*, 26 F.3d 960 (9th Cir. 1994) .......................................................... 5

*Dreiling v. American Express Co.*, 458 F.3d 942 (9th Cir. 2006) ........................................ *passim*

*Dreiling v. American Express Co., Inc.*, 351 F. Supp. 2d 1077 (W.D. Wash. 2004)
    reversed on other grounds *Dreiling v. American Express Co.*, 458 F.3d 942
    (9th Cir. 2006) ....................................................................................................................... 8

*Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002) .............................................................. 10

*Fields v. Legacy Health Sys.*, 413 F.3d 943 (9th Cir. 2005) ............................................................. 10

*Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232 (1976) ............................................ 4

*Gryl ex rel. Shire Pharm. Group PLC v. Shire Pharm. Group PLC*, 298 F.3d 136
    (2d Cir. 2002) ........................................................................................................................ 8

*Healthrac, Inc. v. Sinclair*, 302 F. Supp. 2d 1125 (N.D. Cal. 2004) ............................................... 12

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2006) ......................................................................... 3

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ............................................. 11

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002) ....................................................... 10

*Kay v. Scientex Corp.*, 719 F.2d 1009 (9th Cir. 1983) ....................................................................... 4

*Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582 (1973) ................................ 4

*Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316 (2d Cir. 1998) ............................................... 4

*Morrison v. Madison Dearborn Capital Partners III, LP*, 389 F. Supp. 2d 596
    (D. Del. 2005) ........................................................................................................................ 4

*Muhammad v. United States Dept. of Housing and Urban Dev.*, No. C 06-05298,
    2006 WL 2598015 (N.D. Cal. 2006) .................................................................................... 10

*Olagues v. Semel*, No. C06-04286 (MJJ), 2007 U.S. Dist. LEXIS 55382 (N.D. Cal,
    Jan. 18, 2007) ....................................................................................................................... 12

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) ........................................................................... 10

*Roth v. Reyes*, No. C 06-02786 (CRB), 2007 WL 518621
    (N.D. Cal. Feb. 13, 2007) ("*Roth I*") ............................................................................ *passim*

*Roth v. Reyes*, No. C 06-02786 (CRB), slip op.
    (N.D. Cal. Aug. 27, 2007) ("*Roth II*") ................................................................................. 8

*Segen v. CDR-Cookie Acquisitions, LLC*, [2005-2006 Tr. Binder], Fed. Sec. L. Rep.
    (CCH) ¶ 93,664 (S.D.N.Y. Jan. 6, 2006) ............................................................................. 5

1 | *Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981) ........................................................... 12

2 | **STATUTES AND REGULATIONS**

3 | 15 U.S.C. § 78p(b) ............................................................................................................... 1, 5

4 | 17 C.F.R. § 240.16b ............................................................................................................*passim*

5 | **RULES**

6 | FED. R. CIV. P. 8(a) .................................................................................................................... 1

7 | FED. R. CIV. P. 9(b) ............................................................................................................ 1, 3, 4

8 | FED. R. CIV. P. 12 (b)(6) ..................................................................................................... 1, 10

9 | **MISCELLANEOUS**

10 | 3D H.S. Bloomenthal & S. Wolff, *Securities & Federal Corporate Law* § 21:66.55
        (2d ed. Westlaw 2004) ........................................................................................................ 6

12 | Ownership Reports and Trading by Officers, Directors and Principal Security
        Holders, SEC Rel. No. 8600, 2005 WL 1843461 (August 3, 2005) ............................... 6, 7

13 | Ownership Reports and Trading by Officers, Directors and Principal Security
        Holders, SEC Rel. No. 26389, 1995 WL 597472 (October 11, 1995) .............................. 5

15 | Ownership Reports and Trading by Officers, Directors and Principal Security
        Holders, SEC Rel. No. 37260, 1996 WL 324486 (June 14, 1996) .................................... 6

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 27, 2007, at 9:30 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Martin J. Jenkins, United States District Court, 450 Golden Gate Ave., San Francisco, CA 94102, defendant Applied Micro Circuits Corporation ("AMCC" or the "Company"), will move the Court for an Order dismissing the Complaint with prejudice pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6).  This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the Request for Judicial Notice; the Declaration of Dale R. Bish ("Bish Decl."), together with accompanying exhibits; the [Proposed] Order; all pleadings and papers filed herein; oral argument of counsel; and any other matter that may be submitted at the hearing.  AMCC also hereby joins in the motions to dismiss filed by David M. Rickey and William E. Bendush.

**STATEMENT OF ISSUES (Civil L.R. 7-4(a)(3))**

1. Has plaintiff satisfied the pleading requirements with respect to his claims under Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)")?
2. Are plaintiff's Section 16(b) claims time barred?

**SUMMARY OF ARGUMENT**

Plaintiff brings a Section 16(b) action against two former officers of nominal defendant AMCC based on the argument that stock options acquired by these individuals through Company option grants do not qualify for an exemption from Section 16(b) liability because the options were purportedly not approved by the Company's Board of Directors or one of its committees. Plaintiff is wrong.  The stock option grants *were* approved by the Compensation Committee. Additionally, as plaintiff's claims are based entirely on option grants from over three years ago, and as plaintiff alleges no basis for equitable tolling, his claims are barred by the two-year statute of limitations under Section 16(b).

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Leon Segen is a putative shareholder of AMCC who is seeking to recover "short swing" profits allegedly realized by the individual defendants in connection with their receipt of stock option grants between 1999 and 2001. Plaintiff has brought this action under Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act") despite the fact that the stock option grants were approved by the Company's Compensation Committee and are therefore subject to exemption under Rule 16b-3(d)(1).

Plaintiff concedes that "[i]t was [AMCC's] Compensation Committee's province to approve option grants to AMCC's executives" and that AMCC's Compensation Committee "consist[s] of three non-employee members of AMCC's Board of Directors. ¶ 12.[1] Thus, every grant that was approved by the Compensation Committee is necessarily exempt from liability under Rule 16b-3(d)(1). Recognizing this, plaintiff alleges – without any factual basis and contrary to his other allegations – that the Compensation Committee did not actually approve the grants at issue in this action. Plaintiff's allegations do not remotely come close to stating a claim.

Plaintiff first claims that the Compensation Committee was required to approve of the Option Grants "in advance" of the grant. Nothing in the text of Section 16(b) or Rule 16b-3(d)(1), however, imposes an "in advance" requirement, and courts have consistently refused similar invitations to read additional elements into the exemption under Rule 16b-3(d)(1). Plaintiff next alleges that the Compensation Committee *never* approved the grants because it had impermissibly "delegated" the stock option approval process to AMCC's management. ¶¶ 12, 14. In fact, as explained in the Company's 10-K (upon which plaintiff relies heavily), the Compensation Committee *did* approve the challenged grants. To be sure, AMCC management was responsible for implementing the grants, but nothing in either Section 16(b) or Rule 16b-3(d)(1) prohibits the common sense "delegation" of administrative tasks to management.

---

[1] All "¶" citations are to plaintiff's Complaint.

In addition, the Complaint is subject to – and falls far short of meeting – the heightened pleading requirements of Rule 9(b), which apply here because plaintiff's claims expressly sound in fraud. For example, plaintiff offers none of the who, what, when, where and how regarding his claim that "the circumstances described above show that the Board did not approve or authorize the Option Grants" let alone that "[t]he Company and its senior officers and/or directors, including the Individual Defendants, were engaged in a scheme to backdate the grant of options in order to unjustly enrich the recipients." ¶¶ 22, 21.

Finally, Section 16(b) claims are subject to a two-year statute of limitations. In this case, the last sales that plaintiff challenges allegedly occurred between 1999 and 2001. Plaintiff has not adequately alleged any basis for equitable tolling of the statute of limitations. Therefore, his Section 16(b) claims have been time-barred since 2003.

## ARGUMENT

### I. THE COMPLAINT IS SUBJECT TO THE HEIGHTENED PLEADING STANDARDS OF RULE 9(B)

As explained in a recent opinion of this Court addressing claims brought under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ("Section 16(b)"), notice pleading *normally* applies to an action under Section 16(b) because such claims *generally* do not involve allegations of fraud. *See Roth v. Reyes*, No. C 06-02786 (CRB), 2007 WL 518621, *8 (N.D. Cal. Feb. 13, 2007) ("*Roth I*"). However, where a complaint sounds in fraud – as is the case here – the allegations are subject to the heightened pleading standards of Rule 9(b). *Id.*; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2006) (holding that "a plaintiff may nonetheless be subject to Rule 9(b)'s particularity mandate if his complaint 'sounds in fraud,' even if his cause of action "does not contain an element of fraud").

Here, plaintiff alleges that "the Option Grants were the product of a backdating scheme." ¶ 17. Plaintiff also alleges that "the Company and its senior officers and/or directors, including the Individual Defendants, were in engaged in a scheme to backdate." ¶ 21. Addressing allegations nearly identical to those alleged here, this Court in *Roth* found that "where [p]laintiff's theory of liability hinges on alleged misrepresentations by the insiders in their

Section 16(a) disclosures.... the more rigorous standard of Rule 9 applies." *Roth I*, 2007 WL 518621, at *8. Rule 9(b), therefore, should apply here.

## II. THE CHALLENGED TRANSACTIONS ARE EXEMPT FROM SECTION 16(b)

### A. The Statutory Framework

Section 16(b) is designed to prevent the "unfair use of information which may have been obtained by a statutory insider by reason of his relationship to the issuing corporation." *Kay v. Scientex Corp.*, 719 F.2d 1009, 1012 (9th Cir. 1983). It does so by requiring corporate insiders (officers, directors and greater than ten percent shareholders) to return to the issuer any profit realized by them from a purchase and sale (or sale and purchase) of the issuer's equity securities within a period of less than six months. Proof that the defendant traded on inside information is not required; the statute imposes an absolute rule of strict liability for purchases and sales occurring within less than six months. *Id.* at 1013.

Congress imposed strict liability for profiting from purchases and sales made within six months of each other "[b]ecause of the danger of corporate insiders using inside information to generate profits from short-term buying and selling of their company's stock[.]" *Morrison v. Madison Dearborn Capital Partners III, LP*, 389 F. Supp. 2d 596, 598 (D. Del. 2005); *see also Magma Power Co. v. Dow Chem. Co.,* 136 F.3d 316, 320 (2d Cir. 1998).

The United States Supreme Court has explained the purpose of Section 16(b) as follows:

> Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public. By trading on this information, these persons could reap profits at the expense of less well informed investors. In §16(b) Congress sought to 'curb the evils of insider trading (by) taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great'. . . It accomplished this by defining directors, officers, and beneficial owners as those presumed to have access to inside information and enacting a flat rule that a corporation could recover the profits these insiders made on a pair of security transactions within six months.

*Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 243-44 (1976) (citation omitted); *see also Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 591-92 (1973) ("Congress recognized that shortswing speculation by stockholders with advance, inside information would threaten the goal of the Securities Exchange Act to 'insure the maintenance of fair and honest markets.'") (citation omitted); Ownership Reports and Trading by Officers,

Directors and Principal Security Holders, SEC Rel. No. 26389, 1995 WL 597472, at *2 and n.9 (October 11, 1995) (Section 16 was drafted "specifically to target 'directors and officers of corporations who used their positions of trust and the confidential information which came to them in such positions, to aid them in their market activities.'") (citation omitted).

Congress expressly authorized the Securities and Exchange Commission (the "SEC" or the "Commission") to exempt from Section 16(b)'s reach transactions that do not pose a significant risk of corporate insiders misusing non-public information to profit at the expense of uniformed investors. *See* 15 U.S.C. § 78p(b) (providing that liability shall not attach to "any transaction or transactions which the Commission by rules and regulations may exempt[.]"). If the rules or regulations of the SEC have exempted a particular transaction from Section 16(b) coverage, no liability can be imposed based on that transaction. *See Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964-65 (9th Cir. 1994); *Dreiling v. American Express Co.*, 458 F.3d 942, 948 (9th Cir. 2006) ("Congress provided an open-ended delegation to the SEC, authorizing it to exempt . . . transactions 'not comprehended with the purpose of [§ 16(b)]'") (citation omitted). Accordingly, a Section 16(b) claim is properly dismissed on a motion to dismiss if the transactions at issue fall "squarely within" an exemption. *Segen v. CDR-Cookie Acquisitions*, *LLC*, [2005-2006 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 93,664, at 97,959-75 (S.D.N.Y. Jan. 6, 2006) (citation omitted).

**B.    The Rule 16b-3(d) Exemptions**

Plaintiff claims that the stock options granted to the defendants by AMCC are not exempt under SEC Rule 16b-3. *See* ¶¶ 10-25. Rule 16b-3, entitled "Transactions between an issuer and its officers or directors," provides in pertinent part:

> (a)    General.  A transaction between the issuer . . . and an officer or director of the issuer that involves issuer equity securities *shall be exempt* from section 16(b) of the Act if the transaction satisfies the applicable conditions set forth in this section . . . .
>
> \*            \*            \*
>
> (d)    Acquisitions from the Issuer.  Any transaction . . . involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, *shall be exempt if*:

    (1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors . . . .; or

    (3) The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercise or conversion) or its underlying equity security.

17 C.F.R. § 240.16b-3(a) and § 240.16b-3(d)(1) & (3).

  Thus, stock option grants are exempt from liability under Rule 16b-3(d) if certain conditions are met. The SEC exempted such insider-issuer transactions under Rule 16b-3(d) because they generally do not lend themselves to the abusive use of inside information with which Section 16(b) is concerned. The "'unfair use of information' that concerned Congress [when it enacted Section 16(b)] was insiders' transactions with investors who were at an informational disadvantage." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, SEC Rel. No. 8600, 2005 WL 1843461, at *6 (August 3, 2005) (citation omitted). However, "where the issuer, rather than trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute." *Dreiling,* 458 F.3d at 948 (quoting Ownership Reports and Trading by Officers, Directors and Principal Security Holders*,* SEC Rel. No. 37260, 1996 WL 324486, at n.16 (June 14, 1996)). *See* 3D H.S. Bloomenthal & S. Wolff, *Securities & Federal Corporate Law* § 21:66.55 (2d ed. Westlaw 2004) ("Market transactions present opportunities for profit based upon non-public information in a way that transactions with the issuer do not."). Accordingly, exempting transactions between an insider and the issuer is "entirely consistent with the intent of Congress in enacting Section 16(b)" since the transactions "involv[e] parties on an equal footing from the standpoint of knowledge of inside information." Ownership Reports and Trading by

Officers, Directors and Principal Security Holders, SEC Rel. No. 8600, 2005 WL 1843461, at *6 (citation omitted).[2]

### C. The Grants At Issue Fall Squarely Within The Rule 16b-3(d)(1) Exemption

As explained above, Rule 16b-3(d)(1) exempts option grants to officers and directors from liability if the option grant was approved by "the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors." 17 C.F.R. §240.16b-3(d)(1). Plaintiff concedes that AMCC's Compensation Committee is composed of two or more Non-Employee Directors. ¶ 12. Plaintiff alleges, however, that the exemption is not available because the Compensation Committee did not properly approve the grants. *Id.*; *see also* ¶ 20 (alleging that the Company's Form 2007 10-K "disclosed that the Compensation Committee had not approved certain option grants").

Plaintiff is wrong. As set forth below, the Company's Form 10-K explains that even the restated grants *were* approved by the Compensation Committee. Other than mischaracterizing the Company's public disclosures, plaintiff has not alleged *any* facts to support his bald (and incorrect) assertion that AMCC's Compensation Committee did not approve the grants at issue in this action. Because the Compensation Committee *did* approve the challenged transactions, the literal requirements of Rule 16b-3(d)(1) have been met. No more is required. As the SEC explained, "the only limitations on the exemption for transactions between the issuer and its officer or director are the objective conditions set forth . . . [in] the rule." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, SEC Rel. No. 8600, 2005 WL 1843461, at *3.

#### 1. Plaintiff's "In Advance" Theory Fails as a Matter of Law

Plaintiff first argues that Rule 16b-3(d)(1) requires that, in addition to the express requirements of Rule 16b-3(d)(1), the grants were required to be approved "in advance" in order to qualify for the exemption. ¶¶ 11, 14, 15. In other words, plaintiff is reading the "in advance"

---

[2] When the Ninth Circuit recently affirmed the SEC's authority to enact Rule 16b-3(d), it gave "significant weight to the SEC's determination that board-approved insider-issuer transactions were 'not vehicles for the speculative abuse that Section 16(b) was designed to prevent.'" *Dreiling,* 458 F.3d at 949 (citation omitted).

1  language into the exemption. On the contrary, plaintiff's "in advance" argument was
2  specifically rejected by Judge Breyer. *See Roth v. Reyes*, No. C 06-02786 (CRB), slip op. at 8
3  (N.D. Cal. Aug. 27, 2007) ("*Roth II*") (attached as Exhibit D to the Bish Declaration filed
4  concurrently herewith). Judge Breyer rejected the "in advance" theory because such a
5  requirement "appears nowhere in the text of the Rule [16b-3(d)(1)" and also because he found
6  that plaintiff's argument would be an "implausible" interpretation of the Rule. *Id.* Other courts
7  have similarly specifically rejected invitations to add to the requirements in Rule 16b-3(d). *See,*
8  *e.g., Gryl ex rel. Shire Pharm. Group PLC v. Shire Pharm. Group PLC*, 298 F.3d 136, 141-42
9  (2d Cir. 2002) (rejecting argument that the Rule required non-conditional, purpose-specific
10 approval as neither the text of the Rule nor the SEC's interpretations of the Rule contained any
11 such requirement); *Dreiling v. American Express Co., Inc.*, 351 F. Supp. 2d 1077, 1089 (W.D.
12 Wash. 2004) *reversed on other grounds Dreiling v. American Express Co.*, 458 F.3d 942 (9th
13 Cir. 2006) (refusing "to read a compensatory element into Rule 16b-3(d) where the rule does not
14 refer to any compensatory elements and where the regulatory agency has rejected such a
15 requirement"). Thus, plaintiff's attempt to add the "in advance" requirement into the Rule must
16 fail.
17       Moreover, when pressed to its logical outcome, the inadequacy of plaintiff's theory
18 becomes even more apparent. For example, the Complaint does not suggest which event must
19 follow the Committee's approval. In other words: "in advance *of what*"? To the extent plaintiff
20 contends that Rule 16b-3(d)(1) requires that the Board or committee authorize the grant before
21 the insiders receive them, the Complaint alleges no facts to suggest that any of the individual
22 defendants actually received their grants before the Compensation Committee approved them.
23 The purpose of board or committee approval is to "remove the timing of the acquisition from the
24 control of any one insider." *See Dreiling*, 458 F.3d at 950. Thus, as long as the grants were
25 approved by the Compensation Committee "in advance" of receipt by the individual defendants
26 (and plaintiff makes no allegations to suggest otherwise), the underlying purpose of the
27 exemption – to prevent a single insider from controlling the timing of such an acquisition – is
28 met. Judge Breyer reached the same conclusion in *Roth II*. *See* Ex. D at 8-9 ("to the extent

1   [there is an "in advance" requirement] the Court reads the SEC's construction as pertaining to

2   the approval *in advance of the insiders' receipt of the stock option*, and not requiring approval in

3   advance of the date actually listed on the stock option grant").

4         On the other hand, to the extent plaintiff contends that Rule 16b-3(d)(1) requires the

5   Compensation Committee to approve the grants "in advance" of the date that appears on the

6   grant paperwork, such an argument makes no sense.  If, as plaintiff contends, the grants at issue

7   were backdated, then the dates that appear on the paperwork are not the dates on which the

8   grants were made.  A grant is only made when the Board or other authorized body takes action to

9   approve the grant.  *See* Bish Decl., Exs. B at 4.(a) (i) (1992 Stock Option Plan) ("grants under

10  the [1992 Stock Option] Plan shall be made by (A) the Board if the Board may make grants

11  under the Plan in compliance with Rule 16b-3 promulgated under the Exchange Act or any

12  successor thereto ('Rule 16b-3') . . . , or (B) a Committee designated by the Board to make

13  grants under the Plan, which Committee shall be constituted in such a manner as to permit grants

14  under the Plan to comply with Rule 16b-3"); C at 4.(i).  Thus, by definition, approval by the

15  Compensation Committee is always "in advance" of the actual grant and must comply with the

16  mandates of Rule 16b-3.  *See Roth I*, 2007 WL 518621, at *4 ("Simply put, backdating is

17  irrelevant to Section 16(b). . . . In this Court's view, this exemption applies exactly when it says

18  it does, regardless of whether the grants are backdated.  The statute says nothing of backdating,

19  and this Court declines to impose an additional gate-keeping requirement for issuer-to-insider

20  transactions where the SEC has not.").

21        **2.**      **Plaintiff's "Non-Delegation" Theory Fails as a Matter of Law**

22        Perhaps recognizing that his "in advance" theory lacks merit, plaintiff next alleges that

23  AMCC's Compensation Committee *never* approved the challenged grants because it had

24  "impermissibly delegated" certain functions to management.  ¶¶ 12, 13, 14.  To be sure, AMCC

25  management was indeed responsible for carrying out the administrative aspects and literal

26  distribution of the grants, but nothing in Section 16(b) or Rule 16b-3(d)(1) suggests that the

27  Compensation Committee is required administer the stock-option program in order to qualify for

28  the exemption.  Rather, the only requirement is that the Compensation Committee approve the

grants. *See Roth I*, 2007 WL 518621, at *8 ("[a] failure to exercise oversight is not the same thing as a failure to approve").

Plaintiff alleges in conclusory fashion that "neither the Board nor an authorized committee of the Board considered the specific transactions and approved them." ¶ 14. This bald and unsupported allegation (which is contradicted by other allegations in the Complaint) falls far short of the specificity required by Rule 9(b), which as discussed above applies here.[3] Plaintiff offers no specific facts to support his allegation that the Compensation Committee failed to approve – or even consider – the option grants. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 (9th Cir. 2002) ("The complaint also does not indicate what it means for a management team to be 'extremely strong,' what the 'continual' disagreements that supposedly 'plagued' the managerial team consisted of, or why such disagreements would make it misleading for the company to have characterized its management as being 'strong').[4] For example, plaintiff does not allege that the Compensation Committee failed to meet, failed to vote, approved different amounts, or intended to award options to different individuals. Thus, plaintiff has not adequately alleged that the Compensation Committee failed to approve the challenged transactions.

---

[3] In fact, such allegations fall short of satisfying the lesser standard of Rule 12(b)(6). *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005) (unwarranted inferences and conclusory allegations of law are insufficient to defeat a Rule 12(b)(6) motion to dismiss); *Muhammad v. United States Dept. of Housing and Urban Dev.*, No. C 06-05298, 2006 WL 2598015, at *1 (N.D. Cal. 2006) ("Under Rule 12(b)(6), 'a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations.'") (citations omitted). For example, as discussed below, plaintiff's allegation that 'the Form 10-K further disclosed that the Compensation Committee had not approved certain option grants" (¶ 20) is certainly an "unwarranted deduction of fact" given that the Form 10-K makes clear that the Compensation Committee *did* approve the option grants, including those that were included in the Company's restatement.

[4] *See also Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (complaint inadequate for failing to state what alleged "significant" or "difficult" problems were, for failing to state what kind of "inefficiencies" existed, and for failing to identify an amount of "cost excesses" or "lack of revenue growth" or state how these inefficiencies showed that two companies were not consolidated); *Falkowski v. Imation Corp.*, 309 F.3d 1123, *1134 (9th Cir. 2002) (allegation that defendants "concealed and failed to disclose material facts" is a "textbook example[] of conclusory allegations that fail to satisfy the particularity requirements of Rule 9(b)").

Plaintiff also alleges that the Company's disclosures concerning the stock option investigation somehow demonstrate that the Compensation Committee did not approve the grants in question. ¶¶ 19, 20. On the contrary, the Company's 2006 Form 10-K – upon which plaintiff relies – expressly contradicts this conclusory allegation. *See* Bish Decl., Ex. A at 1-2.[5] Although the measurement dates for certain stock option grants were deemed to be incorrect, the disclosures relating to the internal investigation nevertheless state that the Compensation Committee had approved the challenged transactions. *See id*. at 2 (Category 1 grants measured on "the date the last UWC counterpart was received back from the Compensation Committee"; Category 2 grant "was approved by the Compensation Committee"; Category 3 grant "was approved using the UWC signed by the Compensation Committee"; Category 4 grant used "the closing price of our common stock on the date before the grant was approved [by the Compensation Committee").

In actuality, plaintiff is alleging that the Compensation Committee did not *properly* approve the grants because the process allegedly resulted in backdated options. *See, e.g.,* ¶ 17 ("the Option Grants were not approved by AMCC's Board *in a manner* that satisfied the requisite gate-keeping requirements of the Rule") (emphasis added). However, as Judge Breyer found in *Roth I*, "an allegation that the Board did not *properly* approve the grants is a legal conclusion, rather than a factual allegation that the Board never gave its blessing." *Roth I*, 2007 WL 518621, at *8. In sum, plaintiff does not adequately plead – because he cannot – specific facts reflecting that AMCC's Compensation Committee failed to approve the challenged grants. Plaintiff's failure to do so is "fatal" to his claim. *Id*.

**D.    The Grants At Issue Fall Within The Rule 16b-3(d)(3) Exemption**

The challenged transactions are also subject to the Rule 16b-3(d)(3) exemption. Plaintiff repeats his argument that the exemption is not available because "the Option Grants were not

---

[5] Defendants respectfully request that the Court take judicial notice of Exhibit A to the Declaration of Dale Bish. Judicial notice of this document is appropriate because (a) it is referenced in the Complaint at ¶¶ 19, 20 (*see In re Silicon Graphics Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir. 1999)) and (b) it is a publicly available document that was filed with the SEC (*Dreiling*, 458 F.3d at 946 n.2).

1  approved by AMCC's Board in a manner that satisfied the requisite gate-keeping requirements

2  of the Rule." ¶ 17. As explained above, the Compensation Committee of the Board *did* approve

3  the challenged transactions, thereby satisfying the gate-keeping function envisioned by the SEC.

4  However, unlike Rule 16b-3(d), such approval is not a "prerequisite" under 16b-3(d)(3). That

5  provision provides that transaction shall be exempt if,

6   The issuer equity securities so acquired are held by the officer or director for a period of
    six months following the date of such acquisition, *provided* that this condition shall be
7   satisfied with respect to a derivative security if at least six months elapse from the date of
    acquisition of the derivative security to the date of disposition of the derivative security
8   (other than upon exercise or conversion) or its underlying equity security.

9  17 C.F.R. §240.16b-3(d)(3).

10  Plaintiff's second contention is that Rule 16b-3(d)(3) is "unenforceable as it exceeds the

11 SEC's authority under §16(b) to grant exemptions." ¶ 23. The Ninth Circuit has rejected similar

12 attacks on Rule 16b-3(d), concluding that "[c]onsidering the careful review afforded by the SEC,

13 including its analysis of the comments and decades of experiences in the securities arena, we

14 hold that Rule 16b-3(d) is not arbitrary, capricious, or contrary to § 16(b), and is a valid exercise

15 of SEC authority under § 16(b)." *Dreiling*, 458 F.3d at 952; *see also Olagues v. Semel*, No. C06-

16 04286 (MJJ), 2007 U.S. Dist. LEXIS 55382, at *8 n.4 (N.D. Cal, Jan. 18, 2007). This Court

17 should similarly reject plaintiff's attack on the validity of Rule 16b-3(d)(3).

18 **III.   PLAINTIFF'S CLAIMS ARE TIME-BARRED**

19  Plaintiff's claims should also be dismissed because they are time-barred. "Section 16(b)

20 provides that no suit under the section 'shall be brought more than two years after the date such

21 profit was realized." *Whittaker v. Whittaker Corp.*, 639 F.2d 516, 527 (9th Cir. 1981);

22 *Healthrac, Inc. v. Sinclair*, 302 F. Supp. 2d 1125, 1127 (N.D. Cal. 2004); *see also* ¶ 26. Because

23 the challenged transactions occurred "[d]uring the period from 1999 through at least 2001" (¶ 30)

24 and the last challenged grant was issued on July 11, 2001, the statute of limitations expired on

25 plaintiff's claims no later than July 2003 – *i.e.*, almost four years before plaintiff commenced this

26 action.

27  Plaintiff asserts that the statute of limitations was tolled – and continues to be tolled –

28 because "[t]he Option Grants were not properly disclosed and in fact have not been properly

1  disclosed to this date." ¶ 27. Importantly, plaintiff does not contend that the Section 16(a)
2  reports were not timely filed. Plaintiff nonetheless argues for tolling because, according to him,
3  the transactions at issue were improperly marked as exempt on the Section 16(a) reports. *Id*.

4  When confronted with identical allegations in the *Roth* case, Judge Breyer concluded that
5  plaintiff's tolling argument would render the two-year statute of limitations "nearly
6  meaningless." *Roth I*, 2007 WL 518621, at *4 n.1. Judge Breyer explained, "if a shareholder
7  may bring a suit, notwithstanding the two-year statute of limitations, based on some aspect of the
8  transaction not described by the insider in his SEC filings, then shareholders effectively have an
9  inextinguishable right to challenge the validity of a claimed exemption." *Id*. Indeed, the
10 defendants in this case dispute plaintiff's claim that the relevant exemption does not apply. If
11 tolling depends, as plaintiff says it does, on whether the Section 16(a) reports properly marked a
12 transaction as exempt, then, given that the propriety of the exemption can only be determined by
13 the Court, the statute of limitations is no defense at all. Either the Court determines that the
14 exemption applies (in which case tolling is irrelevant) or the Court determines that the exemption
15 does not apply (in which case the Section 16(a) report failed to "properly disclose" the
16 transaction and the statute is tolled).

17 Although Judge Breyer expressed concern that "enforcing the statute of limitations in this
18 case would arguably permit insiders to immunize themselves from punishment as to one form of
19 corporate misconduct (*i.e*., reaping short-swing profits) by engaging in another (*i.e*., disguising
20 those profits)." *Id*. In this regard, it is important to note what plaintiff does not allege. Plaintiff
21 does not allege that he was unable to tell, from the face of the Section 16(a) reports themselves,
22 that the challenged transactions took place within the statutory six month short-swing period
23 proscribed by Section 16(b). In other words, plaintiff does not contend that the alleged
24 backdating of the stock options disguised the fact that there were purchases and sales within a six
25 month period. Indeed, plaintiff affirmatively alleges that the Forms 4 and 5 as filed show
26 purchases and sales within the statutory six month short-swing period. ¶ 30. Nor does plaintiff
27 contend that having reviewed the Section 16(a) disclosure reports that showed purchases and
28 sales within the statutory six-month short swing period, he made an inquiry of the Company and

received a response that falsely lulled him into inactivity. Plaintiff's only basis for failing to file suit earlier is his contention that the disclosure reports improperly designated the transactions as exempt. ¶¶ 27, 30. As noted above, however, if tolling depends upon properly designating the transactions as exempt or non-exempt, there is no statute of limitations defense.

## CONCLUSION

For the foregoing reasons, plaintiff has failed to state a claim under Section 16(b) and, therefore, his Complaint should be dismissed.

Dated: August 28, 2007

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/ Douglas J. Clark
            Douglas J. Clark

Attorneys for Nominal Defendant
Applied Micro Circuits Corporation