# Exhibit B

Westlaw.

Slip Copy                                                                                                                                  Page 1

Slip Copy, 2007 WL 2188105 (N.D.Cal.)
**(Cite as: Slip Copy)**

H
Olagues v. Semel
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
John OLAGUES, Plaintiff,
v.
Terry SEMEL, Defendant.
**No. C06-04286MJJ.**

Jan. 18, 2007.

N.C. Deday Larene, Detroit, MI, for Plaintiff.
John Olagues, River Ridge, LA, pro se.
Anna Erickson White, Morrison & Foerster LLP, Palo Alto, CA, Jordon Eth, Mark D. Gursky, Morrison & Foerster LLP, San Francisco, CA, for Defendant.

AMENDED ORDER GRANTING TERRY SEMEL'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OF JOHN OLAGUES
MARTIN J. JENKINS, J.

INTRODUCTION

*1 Before the Court is Defendant Terry Semel's Motion to Dismiss the First Amended Complaint of John Olagues. (Doc. No. 11.) Plaintiff Opposes the Motion. For the following reasons, the Court GRANTS the Motion WITH PREJUDICE.

FACTUAL BACKGROUND

On or around July 12, 2006, Plaintiff filed an " Initial Complaint under Section 16 b Rule 16 b) [sic] of the Securities Act of 1934." (Doc. No. 1.) Before Defendant responded, Plaintiff filed his " First Amended Complaint under Section 16(b) and Rule 16 b of the Securities Exchange Act of 1934" ( "FAC"). (Doc. No. 4.) The following reflects the pertinent allegations as plead in the FAC.[FN1]

FN1. The Court notes that Plaintiffs FAC is not on paper with numbered lines in violation of Civil L.R. 3-4(c)(1), thereby making citations to the FAC exceedingly difficult.

Plaintiff alleges that at the time he filed the FAC, he owned 30 shares of Yahoo common stock (FAC at p. 2, ¶ 1), and that Defendant is and has been the Chairman and CEO of Yahoo since April 16, 2004. ( *Id.* at ¶ 2.) On or around March 10, 2004, the Yahoo Compensation Committee, including Arthur Kern, Robert Kotick, and Gary Wilson, purportedly granted Defendant an Employee Stock Option (" ESO") to purchase 2,900,000 shares of Yahoo common stock. (*Id.* at ¶ 3.) The ESO allegedly gave Defendant the right to purchase shares for a set price of $41.70 once the ESO vested, which was five cents above the low closing price for the year of 2004. (*Id.* at ¶¶ 4, 5.) Plaintiff asserts that at the time the ESO was granted, Defendant and the Compensation Committee were aware of Yahoo's expected announcement of great earnings for the period ending March 31, 2004, and a 2/1 stock split that would occur on April 7, 2004. (*Id.* at ¶ 6.) Defendant and the Compensation Committee allegedly knew that the value of Yahoo stock would likely rise substantially, and the ESO grant was part of a scheme to unjustly enrich Defendant. (*Id.*)

As part of the purported scheme, Defendant and the Compensation Committee planned on using Rule 16b exemptions to shield their wrongdoing, and misrepresented in SEC filings that Mr. Kern was a Non-Employee. (*Id.* at p. 3, ¶¶ 1, 2, and 3.) According to Plaintiff, this cover-up tolled the two-year statute of limitations. (*Id.* at ¶ 4.) When Yahoo's earnings were announced, its stock price rose. (*Id.* at ¶ 5.) Defendant allegedly sold Yahoo stock in April 2004, and July 2004, at a profit of approximately $35,000,000 dollars. [FN2] (*Id.* at ¶ 7.) Plaintiff contends that these sales were made in violation of Section 16b "in connection with the March 10, 2004 grant and subsequent sale of stocks

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2188105 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 2

within six months." (*Id.*)

> FN2. Plaintiff, however, demands the return of only $31,000,000 to Yahoo. (FAC at p. 3, ¶ 8 and p. 4, ¶ 2.)

Plaintiff attached to the FAC two charts that purport to summarize "the grants, exercises and sales of options to and by [Defendant] since he began his employment with Yahoo in April 2001." (*Id.* at ¶ 9.) The first chart is entitled "Summary of ESO grants to TERRY SEMEL." Therein, plaintiff alleges that as of July 3, 2006, the ESO granted to Defendant on March 10, 2004 had a theoretical value of $109,000,000 to Defendant. The second chart is entitled "ESO Exercise and Stock Sales." This chart reflects no exercise or sale of an ESO with an exercise price of $41.70.

## LEGAL STANDARD

*2 A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 782 (9th Cir.1996); *Balisteri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984). Further, dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim. *See Abramson v. Brownstein,* 897 F.2d 389, 391 (9th Cir.1990).

In considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir.2000). Because the focus of a 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002). However, matters properly presented to the court, such as those attached to the complaint and incorporated within its allegations, may be considered as part of the motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989).

## ANALYSIS

Defendant argues that the FAC should be dismissed because Plaintiff's allegations show that Rule 16b-3(d)(1) and Rule 16b-3(d)(3) exempt the March 10, 2004 ESO ("Disputed ESO") from Section 16(b) liability.[FN3]

> FN3. As set forth herein the Court finds that the Rule 16b-3(d)(3) exemption applies to the transaction at issue and disposes of Plaintiff's FAC. Therefore, the Court does not address the Rule 16b-3(d)(1) exemption.

As to the Rule 16b-3(d)(3) exemption, Defendant argues that Plaintiff's charts show that Defendant has held the Disputed ESO for more than six months after its acquisition and, thus, the Rule 16b-3(d)(3) exemption applies. Defendant further contends that it is irrelevant that he sold *other* Yahoo common stock (i.e., stock not gained through exercise of the Disputed ESO) within six months of acquiring the Disputed ESO.

In response, Plaintiff proffers extensive quotes from a Securities and Exchange Commission Release explaining amendments to Section 16 that made acquisitions of options from an issuer "purchases" that are "matchable" with sales of underlying stock. In other words, Plaintiff appears to contend that Defendant's sale of *any* Yahoo stock within six months of his acquisition of the Disputed ESO subjects him to Section 16(b) liability. He also offers articles about "back-dating" and "spring-loading" scandals occurring around the country and asserts that the types of transaction at issue here are of the type that Congress sought to prohibit by passing Rule 16(b).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2188105 (N.D.Cal.)
(Cite as: Slip Copy)

Page 3

### A. Section 16(b) Liability and the Rule 16b-3(d)(3) Exemption

Section 16(b) provides in relevant part:
*3 For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason if his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of any issuer (other than an exempted security) or a security-based swap agreement ... involving any such equity security within any period of less than six months ... shall insure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such a transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.

17 C.F.R. § 78p(b).

Section 16(b) does not cover any transaction " which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." *Id.* Rule 16b-3 sets forth several exemptions to Section 16(b) liability. *See* 17 C.F.R. § 240.16b-3. When a transaction falls within an exception, there is no Section 16(b) liability. *See Dreiling v. Am. Express Co.*, 458 F.3d 942 (9th Cir.2006).[FN4]

> FN4. Plaintiff also argues that the SEC does not have authority to create Rules like 16b-3(d)(3) because such rules vitiate the purpose of Section 16(b). The Court notes that the Ninth Circuit has rejected this argument. *Dreiling*, 458 F.3d 942, 949-952.

Rule 16b-3(d)(3) exempts an acquisition if:
The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon the exercise or conversion) or its underlying security.

17 C.F.R. § 240.16b-3(d)(3).

Under this Rule, an acquisition of a derivative security (such as an ESO) by an insider will be exempt from Section 16(b) liability so long as at least six months elapse between the acquisition and disposition of the shares acquired upon exercise of the derivative security. 2-8 Federal Securities Exchange Act of 1934, § 8.06 (Matthew Bender 2006). "Securities other than those granted may be sold within the six months after an exempt grant." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Rel. No. 34-28869, *et al.*, 56 Fed.Reg. 7242, 7254, n.164 (Feb. 21, 1991) ("1991 SEC Release").

### B. Application to the Present Case

Here, Plaintiff's allegations in the FAC and the charts attached thereto establish that the Disputed ESO falls under the Rule 16b-3(d)(3) exemption. According to Plaintiff, the Disputed ESO was issued on March 10, 2004, and granted Defendant the right to purchase shares at a price of $41.70 per share. Yet, the chart summarizing Defendant's exercise of ESOs between April 1, 2001 and February 22, 2006 contains no reference to an ESO exercised at $41.70 per share. The logical inference is that Defendant had not exercised the Disputed Option on or before February 22, 2006. Indeed, in his chart called "Summary of Grants to TERRY SEMEL" plaintiff contends that as of *July 3, 2006*, the Disputed ESO had a theoretical value of $109,000,000 to Defendant. As such, Plaintiff's allegations establish that Defendant held the Disputed ESO for longer than six months after he acquired it.[FN5]

> FN5. Plaintiff also admitted on the record during oral argument that he cannot allege that Defendant sold securities obtained through the exercise of the Disputed ESO within six months of the issuance of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 4

Slip Copy, 2007 WL 2188105 (N.D.Cal.)
(Cite as: Slip Copy)

Disputed ESO.

\*4 Plaintiff, nevertheless, argues that the sale of *any* stock within six months of Defendant's acquisition of the Disputed ESO subjects Defendant to Section 16(b) liability. In support of this position, Plaintiff points only to portions of the 1991 SEC Release that discuss general liability under Section 16(b). In discussing Rule 16b-3, however, the 1991 SEC Release on clarifies that "[s]ecurities other than those granted may be sold within the six months after an exempt grant." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Rel. No. 34-28869 *et al.*, 56 Fed.Reg. 7242, 7254, n.164 (Feb. 21, 1991); *See also* 2-8 Federal Securities Exchange Act of 1934, § 8 .06 (Matthew Bender 2006) (exemption applies so long as at least six months elapse between the acquisition and disposition of the shares *acquired upon exercise of the derivative security*) (emphasis added). Thus, Defendant's purported April and July 2004 sale of securities other than those obtained through the exercise of the Disputed ESO are irrelevant.

Because Plaintiff's allegations establish that Defendant held the Disputed ESO for longer than six months, the exemption in Rule 16b-3(d)(3) applies, and Defendant's acquisition of the Disputed ESO cannot give rise to liability under Section 16(b). Accordingly, the Court GRANTS Defendant's Motion WITH PREJUDICE.

## CONCLUSION

The Court GRANTS Defendant's Motion WITH PREJUDICE.

IT IS SO ORDERED.

N.D.Cal.,2007.
Olagues v. Semel
Slip Copy, 2007 WL 2188105 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.