ROBERT C. SCHUBERT S.B.N. 62684
JUDEN JUSTICE REED S.B.N. 153748
WILLEM F. JONCKHEER S.B.N. 178748
AARON H. DARSKY S.B.N. 212229
SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220

Local Counsel for Plaintiff

PAUL D. WEXLER
BRAGAR WEXLER & EAGEL, P.C.
885 Third Avenue
New York, New York 10022
Telephone: (212) 308-5858

GLENN F. OSTRAGER
OSTRAGER CHONG FLAHERTY & BROITMAN P.C.
570 Lexington Avenue
New York, New York 10022-6894
Telephone: (212) 681-0600

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON S. SEGEN, derivatively on behalf of APPLIED MICRO CIRCUITS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID M. RICKEY, WILLIAM M. BENDUSH, and APPLIED MICRO CIRCUITS CORPORATION,<br><br>    Defendants. | CASE NO. 07-CV-2917 MJJ<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS THE COMPLAINT**<br><br>Date: November 27, 2007<br>Time: 9:30 am<br>Dept.: 11<br>Judge: Hon. Martin J. Jenkins |

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT........................................................... 1

FACTS ................................................................................................ 3

    A.    THE 10-K............................................................... 3

    B.    THE COMPLAINT.................................................. 5

GOVERNING LAW............................................................................ 6

STANDARDS ON A RULE 12(b)(6) MOTION .................................. 7


POINT I

THE COMPLAINT PLEADS SUFFICIENT FACTS TO SHOW
THAT DEFENDANTS ARE NOT ENTITLED TO THE EXEMPTION.............. 9

    A.    The Complaint Alleges That the Option Grants Were Not
Approved in Advance by the Board or a Duly Constituted
Committee of the Board And Thus Are Not Entitled
To the Exemption...................................................... 10

    B.    Rule 16b-3(d)(3) Does Not Apply ..................................... 12


POINT II

THE COMPLAINT IS NOT BARRED
BY THE STATUTE OF LIMITATIONS............................................. 13

CONCLUSION ................................................................................. 17

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1

# TABLE OF AUTHORITIES

## Cases

*Baas v. Dollar Tree Stores, Inc.*
2007 U.S. Dist. LEXIS 65979 (N.D. Cal. August 29, 2007) ................................. 11

*Bell Atlantic Corp. v. Twombly*
127 S.Ct. 1955 (2007) ................................................................................. 7

*Blau v. Albert*
157 F. Supp. 816 (S.D.N.Y. 1957) ................................................................. 16

*D. Neubronner v. Milken*
6 F.3d 666 (9th Cir. 1993) ............................................................................ 11

*Dreiling v.  American Express Co.*
458 F.3d 942 (9th Cir. 2006) .................................................................. 12 , 13

*Dreiling v. America Online, Inc.*
351 F. Supp. 2d 1077,
*rev'd on other grounds*, 458 F.3d 942 (9th Cir. 2006) ..................................... 8

*Dreiling v. American Express Travel Related Services*
351 F. Supp. 2d 1077 (W.D.WA. 2004),
*aff'd* 458 F.3d 942 (9th Cir. 2006) .............................................................. 16

*Kern County Land Co. v. Occidental Petroleum Corp.*
411 U.S. 582 (1973) ...................................................................................... 5

*Litzler v. CC Investments, Ltd.*
362 F.3d 203 (2d Cir. 2004) ................................................................... 14, 15

*Magma Power Company v. The Dow Chemical Company*
136 F.3d 316 (2d Cir. 1998) ...................................................................... 7, 8

*Morales v. Executive Telecard, Inc*
 95 Civ. 10202, 1998 WL 314734 (S.D.N.Y. June 12, 1998) ........................... 16

*Olagues v. Semel*
2007 U.S. Dist. LEXIS 55382 (N.D. Ca. Jan. 18, 2007) ............................... 13

*Pfeiffer v. Price*
2004 WL 3119780 (D.Del 2004) .................................................................. 8

*Rosen v. Brookhaven Capital Management, Co., Ltd*
194 F. Supp. 2d 224 (S.D.N.Y. 2002) ......................................................... 10

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

*Rosen ex rel. Egghead.Com, Inc.* v. *Brookhaven Capital Management, Co. Ltd.*
179 F. Supp. 2d 330 (S.D.N.Y. 2002)......................................................... 16

*Rosenberg v. XM Ventures*
129 F. Supp. 2d 681 (D. Del. 2001) .......................................................... 8

*Roth v. Reyes*
2007 U.S. Dist. LEXIS 14532 (N.D. CA Feb. 13, 2007)........................... 8

*Roth v. Reyes*
2007 U.S. Dist. LEXIS 66066
(N.D. Cal., Aug. 27, 2007)(CRB) ............................................................. 10

*Schaffer v. CC Investments, LDC*
153 F. Supp. 2d 484 (S.D.N.Y. 2001)........................................................ 8

*Tristar Corp. v. Freitas*
84 F.3d 550 (2d Cir. 1996).......................................................................... 16

*Whittaker v. Whittaker Corp.*
639 F.2d 516 (9th Cir.), *cert denied*, 454 U.S. 1031 (1981) ...................... 14


**Statutes and Regulations**

Securities Exchange Act of 1934, Section 16(a)........................................ 6, 15

Securities Exchange Act of 1934, Section 16(b) ....................................... *passim*

Fed.R.Civ.P. Rule 8 ................................................................................... 7, 8

Fed. R. Civ. P. Rule 9(b) ........................................................................... 7, 8, 11

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................... 1, 11

SEC Rule 16b-3 .......................................................................................... 9, 10, 12

SEC Rule 16b-3(d)...................................................................................... *passim*

SEC Rule 16b-3(d)(1).................................................................................. *passim*

SEC Rule 16b-3(d)(2).................................................................................. 10, 12, 13

SEC Rule 16b-3(d)(3).................................................................................. *passim*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS

SEC Rule 16b-6(a) ........................................................................... 7

SEC Rule 16b-6(c) ........................................................................... 7


**Other Authorities**

*Ownership Reports and Trading by Officers, Directors and*
*Principal Security Holders,* Release 33-8600 (2005)
70 Fed. Reg. 46080, 46082 -84 (Aug. 9, 2005) ...................................... 10

*Ownership Reports and Trading by Officers, Directors and*
*Principal Security Holders,* Release 34-37260 (1996)
61 Fed. Reg. 30376, 30,380 (June 14, 1996) ......................................... 10

*Ownership Reports and Trading by Officers, Directors and*
*Principal Security Holders,* Release 34-36356 (1995)
60 Fed. Reg. 53832, 53835 (Oct. 17, 1995).............................................. 10

*Amicus Brief* of the SEC
*Dreiling v. American Express Travel Related Services*
04-35715 (9th Circuit)
*available at* http://www.sec.gov/litigation/briefs/dreiling040505.pdf...................... 10

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Preliminary Statement

In this action pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(p)(" §16(b)"), plaintiff Leon S. Segen ("Segen"), a shareholder of nominal defendant Applied Micro Circuits Corporation ("AMCC" or the "Company"), alleges that the defendants David M. Rickey ("Rickey") and William M. Bendush ("Bendush") (collectively the "Individual Defendants"), former executives of AMCC, garnered short-swing profits trading AMCC securities that must be disgorged to the Company. The Complaint alleges purchases arising from the issuance of stock options to the Individual Defendants on January 19, 2000, March 8, 2000, December 21, 2000 and July 11, 2001 ("Option Grants") that can be matched with the Individual Defendants' sale of the Company's common stock within a six-month period. The Complaint alleges that the Individual Defendants realized short-swing profits in excess of $68 million dollars.

The Individual Defendants and the Company move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) arguing that the Option Grants are exempt as a matter of law under SEC Rule 16b-3(d)(1). Defendants further assert that three of the four Option Grants are exempt as a matter of law under SEC Rule 16b-3(d)(3). Rule 16b-3(d) (the "Rule") exempts option grants to executives that are approved by the Company's Board of Directors in accordance with certain "gate-keeping" criteria.

In May 2006, the Company commenced an internal Audit Committee investigation of its historical stock option granting practices. As a result of the investigation, the Company restated its financial information for the period 1999-2004 and disclosed that certain of its option grants to executives were not properly dated and approved by the Company's Compensation Committee. The Company reported a synopsis of the results of its audit in a Form 10-K, filed with the SEC on

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

January 17, 2007 (the "Form 10-K"). [1]  In reliance on these disclosures, the Complaint alleges that the Option Grants were not approved in accordance with the Rule.

Defendants argue that the Complaint fails to plead sufficient facts to establish that defendants are not entitled to either of the exemptions. But the facts concerning the approval process are within defendants' possession and unknown to plaintiff, except to the extent that the Company chose to reveal them.  Curiously, after spending millions of dollars of the shareholders' money on an investigation and receiving a detailed report, AMCC does not share with the parties or the Court any evidence to refute any of the allegations as to the approval process of the Option Grants.  We show below that the Company's disclosures in its Form 10-K, as detailed in the Complaint, provide sufficient factual allegations to support the conclusion that the Option Grants are not entitled to an exemption  (Point I, *infra*).

Defendants further assert that Plaintiff's claims are time barred under Section 16(b)'s two year statute of limitations.   We show below that, despite defendants' arguments to the contrary,  the statute of limitations has been equitably tolled by the defendants' failures to file accurate SEC Form 4 and Form 5 filings as to the date of the Options Grants and their entitlement to an exemption. Defendants' failure to make full and accurate disclosure as to their purchases tolls the running of the limitations period (Point II, *infra*).

Plaintiff submits that these motions merely highlight fact issues, the resolution of which requires discovery and a trial.  Accordingly, the motions should be denied.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

---

[1] The Form 10-K is annexed as Ex. A to the Declaration of Dale R. Bish (the "Bish Decl.") in support of AMCC's motion to dismiss.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Facts**

The Complaint alleges the following facts which must be considered true on this motion.

Defendant Rickey is the former Chairman and Chief Executive Officer of the Company. Defendant Bendush is the former Senior Vice President and Chief Operating Officer of the Company.   In his Complaint, plaintiff, an AMCC shareholder suing derivatively on behalf of the Company, alleges that short-swing profits of approximately $68 million were garnered by the Individual Defendants from the receipt of these options and sales of AMCC stock.  Plaintiff seeks disgorgement of these monies to AMCC pursuant to §16(b) of the Securities Exchange Act of 1934 ("§16(b)").

On or about May 23, 2006, AMCC's Audit Committee commenced a formal investigation concerning the Company's stock option granting practices.  The Audit Committed consisted of non-employee directors Harvey P. White, as Chairman, Arthur Stabenow, and Julie Sullivan.   Messrs. White and Stabenow were also members of the Compensation Committee, which had oversight responsibilities with respect to the issuance of the Option Grants.

On or about January 17, 2007, the Company filed a Form 10-K with the SEC reporting the results of an investigation by the Audit Committee relating to past stock grants.  The Form 10-K disclosed that the Compensation Committee had failed to approve certain option grants, that certain approvals had been undated, and that in other cases management changed the exercise prices of the options after the grants had been approved, but before they were processed, in order to take advantage of a fall in the market price of the stock    The Form 10-K provides:

**A.    The 10-K**

EXPLANATORY NOTE

Our Audit Committee has completed a review of our stock option granting practices and accounting. Based on the results of this review, we have concluded that the accounting measurement dates under Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees" ("APB 25"), for certain stock option grants awarded during the fiscal years ended March 31, 1999, 2000, 2001 and 2002 differ from the measurement dates previously used to determine any stock-based compensation expense during the six fiscal years ended March 31, 2004 and have determined that we should have recognized

-3-

approximately $95.2 million of stock-based compensation expense that was not accounted for in our previously issued financial statements. Therefore, we have concluded that our previously issued financial statements and all financial press releases and similar communications issued by us for the periods beginning with the fiscal year ended March 31, 1999 should not be relied upon. We do not intend to amend our previously filed annual reports on Form 10-K for these fiscal years.

We are restating in this report the financial information for each of the fiscal years ended March 31, 1999, 2000, 2001 2002, 2003 and 2004. This report includes cumulative restatements of our stockholders' equity for these years and the restatement of our consolidated balance sheet as of March 31, 2005. The restatement had no impact on our previously reported cash balances or revenues.

As a result of our failure to file this report and subsequent quarterly reports on a timely basis, we will not be eligible to use Form S-3 to register our securities with the SEC until all reports required under the Securities Exchange Act of 1934 have been timely filed for at least 12 months.

The grants giving rise to the $95.2 million in additional stock-based compensation expense are summarized below:

**1) For five grants to executives that were approved by unanimous written consents ("UWCs") signed by the members of the Compensation Committee, we could not find evidence of an approval of the grants on or before the dates for which we set the exercise price of the options. Also, the signatures on the UWCs were not dated.** As a result, the final approval and the new measurement date of each grant were deemed to be the date that we received the last signed UWC counterpart via fax. Three of these grants were executive promotion grants for which we set the exercise price as the closing price on dates following the date of the executive's promotion. In each case, the exercise price was the lowest closing price for any date between (and including) the executive's promotion date and the date the last UWC counterpart was received back from the Compensation Committee. Our practice at the time was to set the exercise price as the closing price on the employee's promotion date. **These five grants accounted for approximately $3.4 million of the $95.2 million.**

\* \* \* \* \*

**6) For three grants to executives, eight grants to non-executives and a grant made in connection with an October 2000 acquisition, we concluded that management changed the exercise prices of the options after the option grants were approved, but before they were processed to take advantage of lower closing prices that occurred within a few days after the approved grant date. We have applied variable accounting to**

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**these awards, which accounted for approximately $33.5 million of the $95.2 million.**

The facts and circumstances surrounding the six categories listed above have been, and continue to be, the subject of investigations by the Enforcement Division of the SEC and the United States Attorney's Office for the Southern District of California. The Company intends to fully co-operate in both investigations.

During the course of the investigation, the Audit Committee did not observe any other accounting issues of concern. In addition, at the conclusion of the investigation, the Audit Committee's advisors performed a key word email search for other accounting issues in the historical email records of key finance personnel and did not identify any issues of concern.

None of the members of the management team involved in the granting of options giving rise to the restatement is currently employed with or providing services to the Company. We found our current equity award processes and procedures are appropriate and provide effective controls.   (Emphasis added)

Form 10-K, pp. 1-3, annexed to Bish Decl. as Ex. A.

## B.   The Complaint

The Complaint alleges that the Option Grants were not approved by AMCC's board or an authorized committee of the board and thus the Option Grants are not exempt.  From the selected highlights of the Audit Committee's investigation that AMCC has chosen to disclose,  it is clear that certain "approvals" by the Committee members were "undated and that, in other cases, management had backdated the options, without authorization, so that the options were "in the money" as of issue date. [2]

---

[2] "Backdating" is a manipulative practice that, among other things, conceals the transfer of shareholder equity to executives.  "Backdating" is a particularly abusive scheme when, as is the present case, executives sell substantial shares at artificially inflated prices (due, in large part, to misleading financial statements resulting from the backdating) within a period of six months of receiving backdated options.  In such cases, executives are, in effect, betting on a horse race after the finish, because they effectively are purchasing shares (i.e., the shares underlying their options) at the lower, predated price, and then turning around and selling their shares.  This kind of abusive scheme is exactly what Congress sought to curtail by enacting Section 16(b) of the Securities Exchange Act of 1934. *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 594 (1973).

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

PLAINTIFF'S  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS

The circumstances described above show that the Board did not approve or authorize the

Option Grants in accordance with the requirements of Rule 16b-3(d).   The Complaint satisfies any

applicable pleading standard by stating as follows:

> 14.    None of the Options Grants at issue in this case were approved in advance by the Board or an authorized committee of the Board.  Moreover, neither the Board nor an authorized committee of the Board considered the specific transactions and approved them as required by the SEC Rule 16b-3(d)(1).  On the contrary, the Board impermissibly delegated the gate-keeping functions of the Rule by placing the fox in charge of the henhouse.  Accordingly, the Option Grants are not entitled to the exemption provided by SEC Rule 16 b-3(d)(1).

> 15.    Nor is it possible that the Board or an authorized committee of the Board could have approved in advance the Option Grants.  As evidenced by the Company's restatement of its financial statements, the Option Grants were improperly accounted for as though they were granted on dates prior to their actual grant dates with exercise prices equal to the market prices on such dates. *See* Paragraphs 18 to 22 below.  Neither the Board nor any committee of the Board knowingly approved in advance backdated options.

> 19.    On or about January 17, 2007, the Company filed a Form 10-K with the SEC reporting the results of an investigation by the Audit Committee relating to past stock grants. . . . .  Based upon the Audit Committee's investigation, the Board of Directors determined that the Company should have recognized approximately $95.2 million of stock-based compensation expense that was not previously accounted for in its previously issued financial statements.  As a result, the Company restated its financial information for each of the fiscal years ended March 31, 1999, 2000, 2001, 2002, 2003 and 2004.

> 20.    The Form 10-K further disclosed that the Compensation Committee had not approved certain option grants, certain approvals had been undated, and that in other cases management changed the exercise prices of the options after the option grants were approved, but before they were processed to take advantage of lower closing prices that occurred within a few days after the approved grant date.

## Governing Law

Section 16(a) of the Exchange Act ("§ 16(a)") defines insiders as "[e]very person who is

directly or indirectly the beneficial owner of more than ten per centum of any class of any equity

security . . . which is registered pursuant to section 12 . . . or who is a director or an officer of the

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   issuer of such security." *Id.* Section 16(a) requires statutory insiders to file ownership reports with

2   the SEC upon becoming subject to the statute setting forth the amount of all equity securities of the

3   issuer of which the insider is a beneficial owner. Thereafter, if there is a change in the insider's

4   ownership position, the insider is required to file an amended statement of ownership within two

5   business days of the transaction.

6

7       Section 16(b) of the Exchange Act provides that if a statutory insider purchases and sells or

8   sells and purchases shares of any equity security of such an issuer within a period of less than six

9   months, any profits arising from those transactions are recoverable by the issuer. [3]   Under SEC

10  Rules 16b-6(a) and (c), 17 C.F.R. § 240.16b-6(a) and (c), derivative securities, like option grants,

11  are deemed purchases of the same number of shares underlying the options at a price per share equal

12  to the market price on the actual date of the grants. These purchases can be matched with sales

13  made during the prior and/or subsequent six-month period to compute disgorgeable profits. *See,*

14  *Magma Power Company v. The Dow Chemical Company,* 136 F.3d 316, 321-322 (2d Cir. 1998).

15

16

17          **Standards on a Rule 12(b)(6) Motion**

18      In this case, there is a dispute between the parties as to whether the pleading standards of

19  Fed. R. Civ. P. Rule 8 or Rule 9(b) applies. In *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955

20  (2007), the Supreme Court ruled that, under Rule 8, the Complaint must contain factual "allegations

21  plausibly suggesting (not merely consistent with)" an "entitlement to relief." 172 S.Ct. at 1966.

22  Rule 9(b) requires that allegations relating to fraud or breach of duty be pled with specificity, which

23  is a somewhat higher standard.

24

25

26      [3]  Section 16(b) reads as follows: "For the purpose of preventing the unfair use of information
    which may have been obtained by such beneficial owner, director, or officer by reason of his
27  relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and
    purchase, of any equity security of such issuer . . . shall inure to and be recoverable by the issuer."
28  15 U.S.C. §78p(b).

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1    In *Roth v. Reyes,* 2007 U.S. Dist. LEXIS 14532 *27 fn. 2 (N.D. Cal., Feb. 13,

2    2007)(CRB)("Roth-I") Judge Breyer applied Rule 9(b) to plaintiff's §16(b) Complaint where the

3    issue was the applicability of the Rule.  In Judge Breyer's view, "[p]laintiff's theory of liability

4    hinges on alleged misrepresentations by the insiders in their Section 16(a) disclosures."  Plaintiff

5    respectfully submits that Judge Breyer erred in this determination and that Rule 8 standards should

6    be applied here.[4]  The issue is not whether the defendants committed fraud but whether they meet

7    the conditions for an exemption to a strict liability statute.  *See* Point I, *infra.*  Section 16(b) does not

8    implicate any issues of fraud or mistake and does not involve *scienter* or any moral culpability.  The

9    better-reasoned cases hold that Rule 9(b) is not applicable to §16(b) cases.  *See, e.g., Magma Power

10   Co. v. Dow Chem. Co.,* 136 F.3d 316, 320-21 (2d Cir. 1998).   *See, Rosenberg v. XM Ventures,* 129

11   F. Supp. 2d 681, 685-86 (D. Del. 2001); *Dreiling v. America Online, Inc.,* 351 F. Supp. 2d 1077,

12   1084, rev'd on other grounds, 458 F.3d 942 (9th Cir. 2006). *Schaffer v. CC Investments, LDC*, 153 F.

13   Supp. 2d 484, 486 (S.D.N.Y. 2001).  "A successful claim under 16(b) does not depend on the

14   elements of fraud for its application and, therefore, this court does not require application of Rule

15   9(b) when analyzing a 16(b) claim for purposes of a motion to dismiss."  *Pfeiffer v. Price,* 2004 WL

16   3119780 *3 (D.Del 2004).

---

[4]    Judge Breyer's decision is now on appeal.

## POINT I

### THE COMPLAINT PLEADS SUFFICIENT FACTS TO SHOW
### THAT DEFENDANTS ARE NOT ENTITLED TO THE EXEMPTION

SEC Rule 16b-3 (the "Rule") provides an exemption for "transactions between an issuer and its officers or directors" if the transaction satisfies certain conditions.   In pertinent part, Rule 16b-3 provides:

> **Transactions between an issuer and its officers or directors.**
>
> (d) *Acquisitions from the issuer.*  Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:
>
> (1)  The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;
>
> (2) The transaction is approved or ratified, in compliance with section 14 of the Act, by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of a majority of the securities of the issuer entitled to vote; provided that such ratification occurs no later than the date of the next annual meeting of shareholders; or
>
> (3)  The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercise or conversion) or its underlying equity security.

17 C.F.R. § 240.16b-3.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**A.    The Complaint Alleges That the Option Grants Were Not Approved in Advance by the Board or a Duly Constituted Committee of the Board And Thus Are Not Entitled to the Exemption**

For an exemption under SEC Rule 16b-3(d)(1) and (2), the Board or a committee of at least two outside directors must approve the specific option grant "in advance of the insider's receipt of the stock option". *Roth v. Reyes,* 2007 U.S. Dist. LEXIS 66066 *17  (N.D. Cal., Aug. 27, 2007)("Roth-II")[5]; *Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Release 33-8600 (2005), 70 Fed. Reg. 46080, 46082 -84 (Aug. 9, 2005)(the "2005 Adopting Release"); *Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Release 34-37260 (1996), 61 Fed. Reg. 30376, 30,380 (June 14, 1996)(the "1996 Adopting Release"); *Ownership Reports and Trading by Officers, Directors and Principal Security Holders,* Release 34-36356 (1995), 60 Fed. Reg. 53832, 53835 (Oct. 17, 1995)(the "1995 Adopting Release"); Note 3 to Rule 16b-3.   In the 2005 Adopting Release, the SEC states: "With respect to shareholder, board and Non-Employee Director committee approval, Rule 16b-3(d) requires approval in advance of the transaction." 70 Fed. Reg. 46082, fn. 32.

The advance approval must be more than a rubber stamp.  The board or the committee is required to "actually consider each specific transaction and evidence 'acknowledgment and accountability' as to what it is doing".   *See* SEC amicus brief to the Ninth Circuit in *Dreiling v.*

---

[5]   In *Roth-II,* Judge Breyer dismissed a §16(b) claim, finding that plaintiff had failed to plead facts that show that the transactions at issue did not meet the requirements of Rule 16b-3(d)(1), i.e., that the issuer's board or a committee had failed to approval option grants. In particular, the Court stated:   "Here,   Plaintiff makes no allegation that [the] Compensation Committee failed to acknowledge or accept responsibility for the executive compensation conferred by the challenged grants," or that the option grants at issue were "received" by defendants before their approval by the issuer's Compensation Committee.   2007 U.S. Dist. LEXIS 66066 *18 (N.D. Cal., Aug. 27, 2007)(CRB).   Here, the Complaint meets the standard set forth in *Roth-II* by affirmatively pleading that the Option Grants were not approved by AMCC's board or a committee of the board.  In any event, defendants' entitlement to a Rule 16b-3(d) exemption is an affirmative defense, which defendants must plead and prove. Plaintiff is not obligated to refute an affirmative defense in the Complaint.   *Rosen v. Brookhaven Capital Management, Co., Ltd.,* 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002).

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1    *American Express Travel Related Services,* 04-35715, at 25, *available at,*

2    http://www.sec.gov/litigation/briefs/dreiling040505.pdf ; Note 3 to Rule 16b-3(d).  Gate-keeping is

3    a fundamental requirement of the Rule.

4           The Complaint specifically alleges that the neither the board nor a board committee approved

5    the Option Grants in advance as required by the first exemptive provision of the Rule, or exercised

6    the required gate-keeping oversight.  See pp. 3-5, *supra*; Complaint ¶¶ 14, 15, 19 and 20.   Oddly

7    enough, despite an extensive report of the investigation that is in AMCC's possession, defendants do

8    not offer any support for their view that the Option Grants were properly approved. Instead they

9    quibble with the conclusions that plaintiff reaches from AMCC's limited public disclosures.

10

11          Even under a Rule 9(b) standard, the motion should be denied.  "This Court has held that the

12   general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be

13   relaxed with respect to matters within the opposing party's knowledge. In those situations, plaintiffs

14   can not be expected to have personal knowledge of the relevant facts. *(citations omitted)*."  *D.*

15   *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Baas v. Dollar Tree Stores, Inc.,* 2007 U.S.

16   Dist. LEXIS 65979 *6 (N.D. Cal. August 29, 2007).

17

18          The Complaint alleges, clearly and unequivocally, that the Option Grants were not approved in

19   advance and that the Board did not provide gate-keeping oversight.  The basis for the conclusion is

20   properly stated.  Any facts that are missing are exclusively within defendants' possession.  No more

21   is required on a Rule 12(b)(6) motion.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

PLAINTIFF'S  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS

**B.     Rule 16b-3(d)(3) Does Not Apply**

Defendants also argue that, apart from the (d)(1) exemption, certain of the Option Grants are exempt because defendants held the securities for at least six months. Defendants argue that satisfaction of the six-month holding period exempts the grants under Rule 16b-3(d)(3). (They make this argument with respect to all of the Option Grants except the grant dated July 11, 2001.) Defendants' argument is too simplistic and overlooks the regulatory framework of the Rule. As the Ninth Circuit explained in *Dreiling*, the foundation of the Rule is that the Board has exercised oversight responsibility. The Complaint alleges that the Option Grants were not the product of the Board's volitional act and that the gate-keeping function was not exercised. Accordingly, neither of the subsections of the Rule applies.[6]

Rule 16b-3(d)(3) provides an exemption for "[a]ny transaction . . . involving an acquisition from the issuer (including without limitation grant or award"), which fails to comply with the formal approval requirements of subsections (d)(1) and (2). While Rule 16b-3(d)(3) excuses the failure to obtain a formalistic approval, it does not exclude the requirement that the board exercise its gate-keeping responsibilities in some fashion. The Rule does not provide an exemption for transactions which are devoid of any of the gate-keeping requirements that underlie the Rule. *See Dreiling v. American Exp. Co.,* 458 F.3d 942, 949 (9th Cir. 2006)(SEC's exemption is premised on a determination that certain classes of insider-issuer transactions that meet specified gate-keeping criteria do not present the opportunity for speculative abuse that section 16(b) was designed to prevent). Here, the Complaint alleges that the insider-issuer transactions in question were not "board-approved" in accordance with the "gate-keeping" criteria set forth in Rule 16b-3(d)(1) or (2),

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

---

[6]    Rule 16b-3(d)(3) requires knowing Board or Committee action, and is not available where the Board or Committee did not know what they were approving. Here, plaintiff alleges that the Option Grants were not approved by the Board in a manner which meets the requirements for an exemption under Rule 16b-3. Complaint ¶¶ 14, 15, 18, 18-22.

i.e., and that the deficiencies in grants were not mere matters of form.  This allegation is sufficient to survive a motion to dismiss.

While defendants are correct that the d(1) and d(3) exemptions are alternative exemptive provisions, this does not serve to eliminate the necessity that the board undertake some gate-keeping supervision, a requirement that is the foundation of all subdivisions fo the Rule .   The SEC adopted the (d)(3) exemption to provide a "backstop" exemption where the technical requirements of (d)(1) or (d)(2) were not or could not be satisfied, but did not intend that it was a cure-all in the event that the board abdicated its supervisory function. [7]

The SEC has repeatedly stated that the underlying policy of the exemption was its belief that there is limited opportunity for speculative abuse where the insider is dealing directly with the issuer and the board is overseeing the transaction. *Dreiling v. American Express Company,* 458 F.3d 942, 948 (9th Cir. 2006).  Where the board oversight is missing, neither subdivision d(1) nor d(3) of the Rule can have any applicability.

## POINT II
## THE COMPLAINT IS NOT BARRED
## BY THE STATUTE OF LIMITATIONS

Defendants are correct that the statute of limitations on a §16(b) claim runs for two years from the date of the transaction that led to the profits until the filing of the Complaint.  In this case, that two year period expired prior to the filing of the Complaint.  However, plaintiff submits that the

---

[7] Defendants' reliance on this Court's decision in *Olagues v. Semel,* 2007 U.S. Dist. LEXIS 55382 (N.D. Ca. Jan. 18, 2007 is misplaced.  *Olagues* holds that the six month holding period of Rule 16b-3(d)(3) applies to an exempt grant only, and does bar an officer or director from selling other issuer securities within the six month period.  This decision does not, as defendants assert, confirm that board approval is not required for the six month hold exemption to apply.  Indeed, in *Olagues* it was not disputed that the options at issue were approved by the issuer's Compensation Committee.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS

1  limitations period has been tolled in this case as a result of defendants' failure to make proper filings

2  with the SEC.

3

4      Both the Ninth and Second Circuits have held that, where the defendants fails to make

5  proper filings with the SEC as required by §16(a), the two-year period is tolled until the filing is

6  made. *See, Whittaker v. Whittaker Corp.*, 639 F.2d 516, 527-30 (9th Cir.), *cert denied*, 454 U.S.

7  1031 (1981); *Litzler v. CC Investments, Ltd.*, 362 F.3d 203 (2d Cir. 2004).  As the defendants'

8  filings in this case did not properly report the Option Grants, under the rationale of either decision,

9  the limitations period is tolled and this action is timely.

10

11      The Complaint alleges that although the Individual Defendants filed Forms 4 and 5, they

12  improperly indicated on the Forms that the transactions were entitled to an exemption under Rule

13  16b-3(d).  A review of defendants' Forms 4 and 5 (attached to the Complaint as Exs. A through D)

14  shows that each of defendants' disclosure of the option grants were designated with an "A"

15  indicating that they constituted a "grant, award or other acquisition pursuant to Rule 16b-3(d)" and

16  were thus exempt from §16(b).  Instructions to Form 4

17

18  http://www.sec.gov/about/forms/secforms.htm#1934forms.

19

20      Because the Option Grants are not entitled to exemption under Rule 16b-3(d),  a correct

21  SEC filing would have designated these transactions with a "P" indicating that they constituted an

22  "open market or private purchase of non-derivative or derivative security". *Id.*  That designation

23  would have made it clear that a §16(b) disgorgement claim existed.  These SEC documents did not

24  serve to put anyone on notice of the existence of a §16(b) claim and, without such notice, there is

25  no basis to start the running of the limitations period.

26

27      The policy behind the tolling of the limitations period is succinctly summarized by the

28  *Whitaker* court:

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

However, examining the legislative purpose of §16 as a whole and considering the place of the time provision in that overall legislative scheme, we infer that tolling of the two year time period is required when the pertinent §16(a) reports are not filed. The legislative history and purpose of §16, discussed in Part II-A above, clearly reveal a strong congressional intent to curb insider trading abuses. This purpose would be thwarted if insiders could escape liability by not reporting as required under § 16(a). "(I)t would be a simple matter for the unscrupulous to avoid the salutary effect of Section 16(b) which provides a remedy for the recovery of short term profits, simply by failing to file monthly reports in violation of subdivision (a) and thereby concealing from prospective plaintiffs the information they would need to adequately protect their interests. Such a construction would reward the violation of the statute and would manifestly frustrate congressional intent." Blau v. Albert, 157 F. Supp. 816, 819 (S.D.N.Y.1957). Accord Grossman v. Young, 72 F. Supp. at 378-79.

* * *

In summary, we hold that an insider's failure to disclose covered transactions in the required § 16(a) reports tolls the two year limitations period for suits under § 16(b) to recover profits connected with such a non-disclosed transaction. (footnote omitted) The two-year period for § 16(b) begins to run when the transactions are disclosed in the insider's § 16(a) report. See Blau v. Albert, 157 F. Supp. at 819; Shattuck Denn Mining Corp. v. La Morte, supra. This interpretation is consistent with the legislative scheme of § 16. It is supported by prior cases construing the section and by securities commentators. The district court's result on the limitations issue is therefore reversed.

*Whittaker v. Whittaker Corp.*, 639 F.2d 516, 528, 530 (9th Cir. 1981).

In *Litzler*, the Second Circuit took a similar approach, holding that "the two-year limitations period of Section 16(b) is subject to equitable tolling when a covered party fails to comply with Section 16(a) and that such tolling ends when a potential claimant otherwise receives sufficient notice that short-swing profits were realized by the party covered by Section 16(a)." 362 F.3d 203, 205 (2d Cir. 2004). The Court held that to do otherwise would frustrate the purposes of both §16(a) and §16(b). *Id.* at 207. As the Court stated:

> However, Section 16 compels disclosure (through a Form 4) that is so clear that an insider's short-swing profits will be discovered without any investigation other than the putting together of two and two. The prophylaxis of Section 16 works by imposing an "absolute duty" of disclosure upon insiders, officers, and the other parties covered by its obligations, Grossman 72 F.Supp. at 378; that mechanism would be impaired if the tolling triggered by non-compliance was ended or defeated by mere inquiry notice, or by circumstances in which a person would or should have realized the non-compliance, or by the ability of a shareholder or company to piece together the substance of a Form 4 from disparate sources of information. We hold that the

-15-

incentives of Section 16 are best served if tolling is triggered by noncompliance with the disclosure requirements of Section 16(a) through failure to file a Form 4. (footnote omitted) Such tolling should continue only until the claimant or (depending on the circumstances) the company gets actual notice that a person subject to Section 16(a) has realized specific short-swing profits that are worth pursuing. (emphasis added)

*Litzler v. CC Investments, L.D.C.,* 362 F.3d 203, 208 (2d Cir. 2004).

In accord, *Tristar Corp. v. Freitas*, 84 F.3d 550 (2d Cir. 1996); *Rosen ex rel. Egghead.Com, Inc.* v. *Brookhaven Capital Management, Co. Ltd.*, 179 F. Supp. 2d 330 (S.D.N.Y. 2002); *Morales v. Executive Telecard, Inc.,* 95 Civ. 10202, 1998 WL 314734 (S.D.N.Y. June 12, 1998); *Dreiling v. American Express Travel Related Services*, 351 F. Supp. 2d 1077, 1084-85 (W.D.WA. 2004), *aff'd* 458 F.3d 942 (9th Cir. 2006). As Judge Haight noted in *Brookhaven Capital, supra*, citing then District Judge Kaufman's opinion in *Blau v. Albert*, 157 F. Supp. 816 (S.D.N.Y. 1957).

If a defendant insider has failed to file §16(a) reports, a §16(b) plaintiff need do no more than prove that failure, which *ipso facto* establishes defendant's wrongful concealment preventing plaintiff's discovery of the claim, relieves the plaintiff of making a further showing of his own due diligence, and triggers equitable tolling. That is the conclusion Judge Kaufman reached in *Blau,* 157 F.Supp. at 819: "[T]he only fraud necessary to invoke the federal equitable doctrine is a violation of the statutory trading by insiders"; and concealment of that violation, "whether intentional or inadvertent, effectively prevents suit and demands the mitigating construction of the statute of limitations…" I agree with that conclusion, because it is the only way to implement effectively the public policy declared in § 16 of the Act.

*Rosen ex rel. Egghead.Com, Inc. v. Brookhaven Capital Management, Co. Ltd.,* 179 F. Supp. 2d 330, 338 (S.D.N.Y.2002)

Here, the Complaint alleges that defendants reported in their Forms 4 and 5 that the option transactions were exempt from §16(b). Thus, the public was left with the incorrect impression that no §16(b) claims existed. Under these circumstances, it is plain that the statute of limitations is tolled because to do otherwise would simply reward the defendants for their misleading disclosures. The motion to dismiss on this basis should be denied.

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS

1

## Conclusion

2

3        The motions should be denied.

4

5    Dated: October 12, 2007

6                                          Respectfully submitted,

7

8                                          By:   /s/  Aaron H. Darsky
                                           ROBERT C. SCHUBERT
9                                          JUDEN JUSTICE REED
                                           WILLEM F. JONCKHEER
10                                         AARON H. DARSKY
11                                         SCHUBERT & REED LLP
                                           Three Embarcadero Center, Suite 1650
12                                         San Francisco, California  94111
                                           Telephone: (415) 788-4220
13
                                           Local Counsel for Plaintiff
14

15

16                                         PAUL D. WEXLER
                                           BRAGAR WEXLER & EAGEL, P.C.
17                                         885 Third Avenue
                                           New York, New York 10022
18                                         Telephone: (212) 308-5858

19
                                           GLENN F. OSTRAGER
20                                         OSTRAGER CHONG FLAHERTY
                                             & BROITMAN P.C.
21                                         570 Lexington Avenue
                                           New York, New York 10022-6894
22                                         Telephone: (212) 681-0600

23                                         Counsel for Plaintiff

24

25

26

27

28

SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

PLAINTIFF'S  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS