ROBERT C. SCHUBERT S.B.N. 62684
JUDEN JUSTICE REED S.B.N. 153748
WILLEM F. JONCKHEER S.B.N. 178748
AARON H. DARSKY S.B.N. 212229
SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220

Local Counsel for Plaintiff

PAUL D. WEXLER
BRAGAR WEXLER & EAGEL, P.C.
885 Third Avenue
New York, New York 10022
Telephone: (212) 308-5858

GLENN F. OSTRAGER
OSTRAGER CHONG FLAHERTY & BROITMAN P.C.
570 Lexington Avenue
New York, New York 10022-6894
Telephone: (212) 681-0600

Counsel for Plaintiff

FILED
08 MAR 26 PM 2:12

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON S. SEGEN, derivatively on behalf of APPLIED MICRO CIRCUITS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID M. RICKEY, WILLIAM M. BENDUSH, and APPLIED MICRO CIRCUITS CORPORATION,<br><br>Defendants. | CASE NO. C07-02917 MJJ<br><br>**NOTICE OF APPEAL** |

Case No. C07-02917 MJJ
NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN** that Plaintiff Leon S. Segen, derivatively on behalf of APPLIED MICRO CIRCUITS CORPORATION, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Judgment entered February 29, 2008, attached hereto as Exhibit A.

Dated: March 26, 2008

Respectfully submitted,

By: _____
ROBERT C. SCHUBERT
JUDEN JUSTICE REED
WILLEM F. JONCKHEER
SCHUBERT & REED LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: (415) 788-4220

Local Counsel for Plaintiff

PAUL D. WEXLER
BRAGAR WEXLER & EAGEL, P.C.
885 Third Avenue
New York, New York 10022
Telephone: (212) 308-5858

GLENN F. OSTRAGER
OSTRAGER CHONG FLAHERTY
 & BROITMAN P.C.
570 Lexington Avenue
New York, New York 10022-6894
Telephone: (212) 681-0600

Counsel for Plaintiff

NOTICE OF APPEAL

Case No. C07-02917 MJJ

Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON S. SEGEN, | No. CV 07-02917 MJJ |
| Plaintiff, | **JUDGMENT IN A CIVIL CASE** |
| v. | |
| DAVID M. RICKEY, | |
| Defendant. | |

( ) **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

(X) **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**IT IS SO ORDERED AND ADJUDGED**

Defendants' Motion To Dismiss is **GRANTED.**

Dated:   2/29/2008

Richard W. Wieking, Clerk

By: *MNarcisse*

Monica Narcisse, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON S. SEGEN, | No. C07-02917 MJJ |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| DAVID M. RICKEY, et al. | |
| Defendants. | |

## INTRODUCTION

Before the Court are three Motions to Dismiss, one brought by each of the three Defendants in this action, Applied Micro Circuits Corporation ("AMCC"), David M. Rickey ("Rickey") and William E. Bendush ("Bendush") (collectively, "Defendants"). (Docket Nos. 5, 9, 12.) For the following reasons, the Court **GRANTS** Defendants' Motions to Dismiss.

## FACTUAL BACKGROUND

The material allegations in Plaintiff's Complaint (Docket No. 1, "Complaint") are as follows.

Plaintiff is a New York resident who is the owner of common stock of AMCC. (Complaint ¶ 1.) Rickey is the former Chairman, CEO and President of AMCC, a Delaware Corporation, and Bendush is the former Senior Vice President and CEO of AMCC. (Id. ¶¶ 3-4.) Rickey and Bendush, who were officers of AMCC at the relevant times, received option grants from AMCC. (Id. ¶ 30.) The options included grants to Rickey on January 19, 2000 (4,000,000 options), December 21, 2000 (800,000 options) and July 11, 2001 (400,000 options); and grants to Bendush

on March 8, 2000 (360,000 options), December 21, 2000 (125,000 options) and July 11, 2001 (85,000 options). (*Id.*) Rickey and Bendush engaged in sales of AMCC's stock within six months of acquiring these option grants. (*Id.* ¶ 31.) Rickey and Bendush also improperly claimed, in a Form 4 or Form 5 filed with the SEC, that the above transactions were exempt from § 16(b) liability pursuant to SEC Rule 16b-3(d). (*Id* ¶ 10.)

At all relevant times, the Compensation Committee of AMCC consisted of three non-employee members of AMCC's Board of Directors. (*Id.* ¶ 12.) It was the Compensation Committee's province to approve option grants to AMCC's executives. (*Id.*) The Compensation Committee permitted AMCC's management, including Rickey and Bendush, to grant options to certain employees. (*Id.*)

In 2006, AMCC's Audit Committee began a formal investigation of AMCC's stock option granting practices and on January 17, 2007, AMCC filed a Form 10-K with the SEC reporting the results of an investigation by the Audit Committee relating to past stock grants. (*Id.* ¶¶ 18-19.) The Form 10-K reported, inter alia, that AMCC had improperly dated certain stock option grants, the Compensation Committee did not approve certain option grants and certain approvals were undated. (*Id.* ¶¶ 19-20.)

AMCC's filing gave Plaintiff notice of this issue and led him to file suit, on June 5, 2007, against Defendants, pursuant to § 16(b). Plaintiff alleges that the option grants were not approved by the shareholders in accordance with Rule 16b-3(d)(2) or approved by the Board or an authorized committee of the Board in a manner that satisfies the requirements of Rule 16(b)-3(d)(1). (*Id.* ¶¶ 10, 14-15, 17.) Instead, the option grants were a product of a backdating scheme unknown to the Board and not approved by it. (*Id.* ¶ 17.) In addition, Defendants did not properly disclose the option grants at issue in this action. (*Id.* ¶ 27.) Defendants now seek to dismiss Plaintiff's complaint.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan*

2

1  *of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699
2  (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In
3  pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is more than
4  merely conceivable, but plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,
5  1974 (2007).

6  In considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the
7  complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v.*
8  *United States*, 234 F.3d 428, 435 (9th Cir. 2000). Because the focus of a 12(b)(6) motion is on the
9  legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review
10 to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th
11 Cir. 2002). However, matters properly presented to the court, such as those attached to the
12 complaint and incorporated within its allegations, may be considered as part of the motion to
13 dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.
14 1989). Where a plaintiff fails to attach to the complaint documents referred to therein, and upon
15 which the complaint is premised, a defendant may attach to the motion to dismiss such documents in
16 order to show that they do not support the plaintiff's claim. *See Pacific Gateway Exchange*, 169 F.
17 Supp. 2d at 1164; *Branch v. Tunnell*, 14 F.3d 449, 44 (9th Cir. 1994) (overruled on other grounds).
18 Thus, the district court may consider the full texts of documents that the complaint only quotes in
19 part. *See In re Stay Electronics Sec. Lit.*, 89 F.3d 1399, 1405 n.4 (1996), *cert denied*, 520 U.S. 1103
20 (1997).

21                                    **ANALYSIS**
22 **A.    Section 16(b) Liability**
23 "Congress enacted § 16(b) as part of the Securities Exchange Act of 1934 to prevent
24 corporate insiders from exploiting their access to information not generally available to others."
25 *Dreiling v. American Express Company*, 458 F.3d 942, 946 (9th Cir. 2006) (citation and quotations
26 omitted). Section 16 contains two separate provisions. Section 16(a) requires that all officers,
27 directors, and large shareholders report to the SEC any changes in their "beneficial ownership" of
28 equity securities of their corporations. 15 U.S.C. § 78p(a). Section 16(b) imposes liability on such

3

"insiders" for short-swing transactions in such securities. 15 U.S.C. § 78p(b). Section 16(b) provides in relevant part:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of any issuer (other than an exempted security) within any period of less than six months . . . shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner[.]

15 U.S.C. § 78p(b). "Section 16(b) flatly prohibits a class of transactions in which the possibility of abuse was believed to be intolerably great, and does so by imposing a strict prophylactic rule with respect to insider short-swing trading." *Dreiling*, 458 F.3d at 947.

There are however, limits to the reach of § 16(b). Section 16(b) does not cover any transaction "which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." *Id.* Securities and Exchange Commission ("SEC") Rule 16b-3(d) sets forth three exemptions to § 16(b) liability. *See* 17 C.F.R. § 240.16b-3. When a transaction falls within one of these exemptions, there is no liability under § 16(b). *See Dreiling*, 458 F.3d at 947-48. Specifically, the SEC exempts certain issuer-to-insider stock option grants from liability so long as the stock option grants falls into one of the following categories:

> (1) The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;
>
> (2) The transaction is approved or ratified, in compliance with section 14 of the Act, by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of a majority of the securities of the issuer entitled to vote; provided that such ratification occurs no later than the date of the next annual meeting of shareholders; or
>
> (3) The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, provided that this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercise or conversion) or its underlying equity security.

17 C.F.R. § 240.16b-3(d). The Ninth Circuit has held that the creation of these exemptions by the SEC was a valid exercise of their rulemaking authority under § 16(b). *See Dreiling*, 458 F.3d at

947-48.

B. **Plaintiff Alleges That a Backdating Scheme Undermined The Approval of Grants.**

As a preliminary matter, the Court clarifies Plaintiff's allegations. Plaintiff ultimately alleges that Defendants are liable under § 16(b) and the option grants are not exempt under Rule 16b-3(d). To support this argument Plaintiff appears to plead two different versions of the facts. On one hand, Plaintiff pleads that the Compensation Committee or the Board approved the option grants but was unaware of the backdating scheme so their approval did not satisfy the requirements of approval under Rule 16b-3(d)(1). (*See* Complaint ¶¶ 17, 19, 20.) On the other hand, Plaintiff's pleading can be read as loosely alleging that neither the Board nor the Compensation Committee approved the option grants at issue.

While pleading in the alternative is allowed, Plaintiff cannot plead contradictory versions of the facts. Here, the gravamen of Plaintiff's Complaint is the former theory: that the Compensation Committee or Board approved the option grants but lacked information about the backdating scheme and failed to dispatch its gatekeeper functions effectively. Plaintiff does not allege, in the literal sense, that approval was not provided. Rather, the Complaint repeatedly states that neither the Board nor the Compensation Committee approved the grants in advance or approved them as required by Rule 16b-3(d)(1). (*See* ¶¶ 11, 14, 17.) In addition, the Complaint alleges that the grants could not have been sufficiently approved in advance because they were the product of a backdating scheme. (*See* ¶¶ 17, 21.) Therefore, the Court understands Plaintiff as alleging that the grants were approved but the backdating scheme undermined the efficacy of the approval.

C. **Plaintiff's Complaint is Exempt From Section 16(b) Liability**.

Defendants seek to Dismiss Plaintiff's Complaint because the challenged transactions are exempt from § 16(b) and because Plaintiff's claims are time-barred by the applicable two-year statute of limitations. Finding that Defendants are exempt from § 16(b) liability under 17 C.F.R. § 240.16b-3(d)(1), the Court need not reach Defendants' other arguments.

The first exemption under § 16(b), set forth in Rule 16b-3(d)(1), exempts transactions that are "approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors." 17 C.F.R. § 240.16b-3(d)(1).

5

1  Defendants contend that Plaintiff's Complaint must be dismissed because the stock option grants at
2  issue were approved by AMCC's Compensation Committee and thus are exempt under this
3  provision. (AMCC Mem. at 7-8; Bendush Mem. at 6-8 ; Rickey Mem. at 3-6.)
4      As discussed above, Plaintiff alleges, and clarifies in this Motion, that the transactions at
5  issue were not approved in accordance with the gatekeeping criteria of Rule 16b-3(d) and thus the
6  exemption does not apply. (Plf.'s Opp. at 1.) Plaintiff relies on the Form 10-K filed by AMCC, to
7  argue that the approval of the grants at issue did not occur in advance of the date actually listed on
8  the stock option grant because of a backdating scheme at AMCC.[1] (*See* Plf.'s Opp. at 4-5; 10;
9  Complaint ¶¶ 21-22.)
10     Defendants also perceive Plaintiff's Complaint as alleging a second theory as to why the
11 exemption does not apply: that the AMCC Compensation Committee never approved the challenged
12 grants because it had impermissibly delegated the gatekeeping functions of Rule 16b-3(d)(1) and put
13 "the fox in charge of the henhouse." (AMCC Mem. at 9-11; Bendush Mem. at 8; Complaint ¶ 14.)
14 Plaintiff does, however, concede that the Compensation Committee, whose job it was to approve
15 option grants, consisted of three non-employee members of AMCC's Board of Directors. Section
16 16(b) does not require anything further of this Committee. Plaintiff's real contention, it appears, is
17 the same as his first theory - that the approval given by the Committee was not sufficient under Rule
18 16b-3(d)(1). The Court's reading of Plaintiff's allegations is consistent with the fact that Plaintiff
19 did not respond to Defendants' description of Plaintiff's "second theory" in his Opposition, but
20 rested his entire argument on the first theory. Resolution of Plaintiff's first theory, therefore,
21 resolves the "second theory" set forth in Defendants' briefs.
22     The Court is therefore confronted with the question of whether the allegation of an
23 insufficient approval of stock option grants by a properly-constituted committee is exempt under
24 Rule 16b-3(d)(1). This same question was recently confronted in *Roth v. Reyes*, No. 06-2786, 2007

---

[1] AMCC's Form 10-K, submitted by Defendant AMCC as Exhibit A to the Bish Declaration and quoted by Plaintiff in his Opposition, was referenced in Plaintiff's Complaint and the Court may therefore properly take judicial notice of this document. *See e.g.*, *Hal Roach Studios, Inc*, 896 F.2d at 1555 n.19. The Court does not consider or rely on the other exhibits produced by Defendants and therefore denies Defendant AMCC's Request for Judicial Notice as to the remainder of the exhibits.

WL 2470122 (N.D. Cal. Aug. 27, 2007) ("*Roth II*").[2] In that case Judge Breyer rejected Plaintiff's argument that Rule 16b-3(d)(1) requires approval *in advance* of the date actually listed on the stock option grant and refused to adopt an unwarranted expansion of § 16(b). *Roth II*, 2007 WL 2470122, at *6. This Court similarly rejects Plaintiff's argument here.

As a starting point, the plain language of Rule 16b-3(d)(1) requires nothing other than that the Board, or the appropriate Committee, "approve" the grant. *See* 17 C.F.R. § 240.16b-3(d)(1). Plaintiff argues, however, that "approval" requires more than simply approving the option. In support of this argument Plaintiff relies on *Roth II* and several "adopting releases" issued by the SEC. *See, e.g., Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 70 Fed. Reg. 46,080, 46,082 n.32 (Aug. 9, 2005). *Roth II*, as noted above, comes to the exact opposite conclusion from the theory Plaintiff advances. *Roth II*, 2007 WL 2470122, at *6.

The adopting releases also do not support Plaintiff's contentions. First, the only specific section of the adopting release that Plaintiff cites states that Rule 16b-3(d) requires "approval in advance of the transaction." *See Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Release 33-8600 (2005), 70 Fed. Reg. 46080, 46082-84 n. 32 (Aug. 9, 2005). The Court reads this statement just as the *Roth II* court did.[3] "The Court reads the SEC's construction as pertaining to the approval *in advance of the insiders' receipt of the stock option*, and not as requiring approval in advance of the date actually listed on the stock option grant." *Roth II*,

---

[2] In *Roth II*, the court dismissed Plaintiff's second amended complaint. In an earlier order, *Roth v. Reyes*, No. 06-2786, WL 518621 (N.D. Cal. Feb. 13, 2007), the court dismissed Plaintiff's first amended complaint. Both orders are cited here and are thus referred to as *Roth I* and *Roth II* for ease of reference.

[3] The portion Plaintiff cites, footnote 32, states:
Rule 16b-3(d)(2). With respect to shareholder, board and Non-Employee Director committee approval, Rule 16b-3(d) requires approval in advance of the transaction. Shareholder approval must be by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of the majority of the securities of the issuer entitled to vote. Shareholder ratification, consistent with the same procedural conditions, may confer the exemption only if such ratification occurs no later than the date of the next annual meeting of shareholders following the transaction.
• The officer or director to hold the acquired securities for a period of six months following the date of acquisition. [FN33]
70 Fed. Reg. 46,080, 46,082 n.32 (Aug. 9, 2005)

2007 WL 2470122, at *6. Finally, even if the text of the adopting release supported Plaintiff's argument, the Court again agrees with the *Roth* court that it is "implausible that unexplained dicta in the SEC's adopting releases would somehow implicitly proscribe the granting of backdated stock options." *Id.*

At oral argument, Plaintiff's counsel directed the Court generally to a number of SEC adopting releases, some of which were also cited for general support in the briefs. Plaintiff contends that these documents support the proposition that the Court should vet the required "approval" and should require, among other things, that the grants were approved in advance. The Court, having reviewed the relevant adopting releases, finds this contention unavailing. First, the adopting releases do not state that the courts should scrutinize the approval of an option grant any further than to require "approval" of specific insider-issuer transactions. Next, the only direct exposition in the adopting releases on the contours of what "approval" requires is found in the 1996 adopting release and does not support Plaintiff's contentions or allegations.[4]

Plaintiff, therefore, lacks support for the proposition that the Court should require more than "approval" by the Board, or an appropriate committee, of a specific grant to an insider. In addition, expanding the reach of § 16(b), as Plaintiff advocates, is not in keeping with the purpose of the statute. As the *Roth II* court stated,

> To be clear, by backdating stock options, a company clearly exploits a certain type of information- to wit, information about how the market behaved yesterday. And it is only by virtue of their position within the company that insiders are able to exploit this hindsight and [obtain] more profitable options. But the information exploited is not itself inside information, and therefore, even though Defendants may have used their privileged position for their own benefit, or for the benefit of other employees, (or even, arguably, for the company's benefit), their conduct does not implicate the specific danger that Congress sought to mitigate with Section 16(b).

*Roth II*, 2007 WL 2470122, at *3. Instead, § 16(b) imposes a "strict prophylactic rule with respect to insider, short-swing trading." *See Dreiling*, 458 F.3d at 947 (quoting *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 251 (1976). In applying § 16(b) liability, the Court is not required

---

[4] The 1996 adopting release confirms that "Rule 16b-3(d) requires an issuer board to approve the *specific* insider-issuer transaction for which the exemption is sought." *Dreiling*, 458 F.3d at 954 (emphasis in original); *see Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, Release 34-37260 (1996), 61 Fed. Reg. 30376, 30381 (June 14, 1996). Here, Plaintiff does not allege that a plan was approved, without sufficient detail, and such details were later acted upon without subsequent approval. Thus this gloss on the meaning of "approval" does not advance Plaintiff's arguments.

8

to venture down the path of determining what types of approval are subject to liability, or when, as is the allegation here, an approval given by a properly-constituted committee to an insider may be undermined by other circumstances. Thus, while liability under § 16(b) may be both under- and over-inclusive, the SEC exempted board-approved insider-issuer trades because they satisfied "objective gate-keeping conditions" and did not "give rise to an intolerable level of speculative abuse." *Dreiling,* 458 F.3d at 948, 951. It is not for this Court to change the scope of the statute.

The Court also considers whether Plaintiff can cure the deficiency found by the Court if granted leave to amend. Here, Plaintiff alleges that neither the Board nor the Compensation Committee could have sufficiently approved the options because they did not know about the backdating scheme. Plaintiff, therefore, has pleaded a theory that runs directly into the exemption for approved insider-issuer grants. The Court finds, therefore, that Plaintiff cannot plead around the exemption and leave to amend is inappropriate.

Moreover, *Dreiling* supports the Court's conclusion in this regard. *See Dreiling*, 458 F.3d at 954-55. In *Dreiling*, the Ninth Circuit reversed and remanded a district court's determination that an insider-issuer transaction was exempt under Rule 16b-3(d). *Id.* at 955. In that case, the Circuit held that a complaint alleging that the board issued grants to an entity without knowledge that the entity was deputized as an insider was not exempted under Rule 16b-3(d) and should not have been dismissed on that ground. *Id.* at 954-55. As the Court noted, "[i]f a board does not know that one of its directors is a deputy for another corporation, and thus a potential conduit for inside information, the board would have no reason for special vigilance . . . and . . . would not effectively serve its gatekeeping function and ensure accountability." *Id.* at 954 (quotations omitted). In *Dreiling*, however, the Circuit clarified that it was not expanding the requirements under Rule 16b-3(d), but rather applying the written elements of the rule, there the party's status as an insider. *Id.* at 955. Here, unlike *Dreiling*, Plaintiff effectively pleads that all of the elements of the exemption under Rule 16b-3(d) are met, but that one of them, approval, was insufficiently performed or was later undermined. The Court, however, as discussed above, is not at liberty to require more than the elements set forth in Rule 16b-3(d)(1). Therefore, unlike *Dreiling*, Plaintiff cannot state a claim, or in this case re-plead to state a claim, without again running headlong into the exemption. Leave to

1  amend is, therefore, inappropriate.

2  In addition, Plaintiff fails to plead, much less plead with particularity under Rule 9(b), the factual allegations supporting the fraudulent scheme that the Complaint alleges.[5] Plaintiff, however, is not entitled to re-plead because the transaction, even if more sufficiently pleaded, is exempted from liability under § 16(b). As discussed above, there is no support for the finding that a fraudulent scheme undoes or undermines an appropriate body's approval of a grant to an insider. The scope of § 16(b) liability simply does not extend to the conduct alleged in this Complaint.

8  In sum, Plaintiff brings this action under § 16(b), but seeks to hold AMCC liable for backdating, not short-swing trading. In his complaint, Plaintiff states that the SEC has not had occasion to publicly interpret this exemption in the context of the growing scandal surrounding the backdating of options. (Complaint ¶ 24.) Plaintiff continues to argue, in his Complaint, why § 16(b) should be interpreted by the SEC and this Court to apply to backdated grants. (*Id.*) This Court, however, is not the place for those arguments. Instead, applying the current law, the Court finds that the facts alleged show that the stock option grants to Defendants are exempt under Rule 16(b)-3(d)(1) and thus Defendants are not liable under § 16(b). The Court therefore need not reach Defendants' other contentions that the stock option grants are exempted under 16(b)-3(d)(3) and that the claims are barred by the two-year statute of limitations and not equitably tolled.

18  //

---

[5] Defendants contend that the Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") pleading standard, and not the Federal Rule of Civil Procedure 8 ("Rule 8") standard, should apply to this case. Rule 9(b) provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Defendants argue that Plaintiff's complaint sounds in fraud and thus is subject to the heightened pleading requirements of Rule 9(b). (*See* AMC Mem. at 3.) Defendants rely on a Ninth Circuit case that held, in a Securities Act section 11 claim, that when fraud is not an essential element of a claim, "a plaintiff may nonetheless be subject to Rule 9(b)'s particularity mandate if his complaint 'sounds in fraud.'" *In re Daou*, 411 F.3d 1006, 1027-28 (9th Cir. 2005). A district court, in a very similar case, recently found that the holding in *In re Daou* applies to § 16 claims in which "the theory of liability hinges on alleged misrepresentations by the insiders in their Section 16(a) disclosures." *Roth v. Reyes*, C 06-2786, 2007 WL 518621, at *8 (N.D. Cal. Feb. 13, 2007) ("*Roth I*"). Plaintiff, on the other hand, argues that the heightened Rule 9(b) standard does not apply here because § 16(b) does not implicate any issues of fraud or mistake and does not involve scienter or any moral culpability. (Plf.'s Opp. at 8.)

Given the Court's finding that the Complaint alleges a backdating scheme, the Court is inclined to find, as did the court in *Roth I*, that Plaintiff's Complaint sounds in fraud and thus Plaintiff must meet the heightened pleading standard of Rule 9(b). However, because resolution of the pleading standard is unnecessary to the outcome of this Motion, the Court need not rule on this issue.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss. The Clerk of the Court is directed to close the file.

**IT IS SO ORDERED.**

Dated: February 29, 2008

                                   MARTIN J. JENKINS
                                   UNITED STATES DISTRICT JUDGE